# LONDONER *v.* CITY AND COUNTY OF DENVER.

## ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 157.   Argued March 6, 9, 1908.—Decided June 1, 1908.

The legislature of a State may authorize municipal improvements without any petition of landowners to be assessed therefor, and proceedings of a municipality in accordance with charter provisions and without hearings authorizing an improvement do not deny due process of law to landowners who are afforded a hearing upon the assessment itself.

The decision of a state court that a city council properly determined that the board of public works had acted within its jurisdiction under the city charter does not involve a Federal question reviewable by this court.

Where the state court has construed a state statute so as to bring it into harmony with the Federal and state constitutions, nothing in the Fourteenth Amendment gives this court power to review the decision on the ground that the state court exercised legislative power in construing the statute in that manner and thereby violated that Amendment.

There are few constitutional restrictions on the power of the States to assess, apportion and collect taxes, and in the enforcement of such restrictions this court has regard to substance and not form, but where the legislature commits the determination of the tax to a subordinate body, due process of law requires that the taxpayer be afforded a hearing of which he must have notice, and this requirement is not satisfied by the mere right to file objections; and where, as in Colorado, the taxpayer has no right to object to an assessment in court, due process of law as guaranteed by the Fourteenth Amendment requires that he have the opportunity to support his objections by argument and proof at some time and place.

The denial of due process of law by municipal authorities while acting as a board of equalization amounts to a denial by the State.

33 Colorado, 104, reversed.

THE facts are stated in the opinion.

*Mr. Joshua Freeman Grozier* for plaintiffs in error.

*Mr. F. W. Sanborn* and *Mr. Halsted L. Ritter*, with whom *Mr. Henry A. Lindsley* was on the brief, for defendants in error.

MR. JUSTICE MOODY delivered the opinion of the court.

The plaintiffs in error began this proceeding in a state court of Colorado to relieve lands owned by them from an assessment of a tax for the cost of paving a street upon which the lands abutted. The relief sought was granted by the trial court, but its action was reversed by the Supreme Court of the State, which ordered judgment for the defendants. 33 Colorado, 104. The case is here on writ of error. The Supreme Court held that the tax was assessed in conformity with the constitution and laws of the State, and its decision on that question is conclusive.

The assignments of error relied upon are as follows:

"First. The Supreme Court of Colorado erred in holding and deciding that the portion of proviso 'eighth' of section 3 of article 7 of 'An Act to Revise and Amend the Charter of the City of Denver, Colorado, signed and approved by the Governor of Colorado, April 3, 1893' (commonly called the Denver City Charter of 1893), which provided, 'And the finding of the city council by ordinance that any improvements provided for in this article were duly ordered after notice duly given, or that a petition or remonstrance was or was not filed as above provided, or was or was not subscribed by the required number of owners aforesaid, shall be conclusive in every court or other tribunal,' as construed by the Supreme Court of Colorado, was valid and conclusive as against these appellees. The validity of so much of said section as is above quoted was drawn in question and denied by appellees in said cause, on the ground of its being repugnant to the due process of law clause of the Fourteenth Amendment of the Constitution of the United States and in contravention thereof.

"Second. The Supreme Court of Colorado further erred in assuming that said city council ever made a finding by ordinance in accordance with said proviso 'eighth.'

\*    \*    \*    \*    \*    \*    \*    \*

"Fifth. The Supreme Court of Colorado more particularly erred in holding and deciding that the city authorities, in fol-

lowing the procedure in this Eighth Avenue Paving District, No. 1, of the city of Denver, Colorado, in the manner in which the record, evidence and decree of the trial court affirmatively shows that they did, constituted due process of law as to these several appellees (now plaintiffs in error) as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

"Ninth. The Supreme Court of Colorado erred in upholding sections 29, 30, and 31, and each thereof of article 7 of 'An Act to Revise and Amend the Charter of the City of Denver, Colorado, signed and approved by the Governor of Colorado April 3rd, 1893' (commonly called the Denver City Charter of 1893), and not holding it special legislation and a denial of the equal protection of the laws and taking of liberty and property of these several plaintiffs in error without due process of law, in violation of both the state and Federal Constitution and the Fourteenth Amendment thereof.

"Tenth. The Supreme Court of Colorado erred in upholding each of the several assessments against the corner lots, and particularly those lots belonging to said Wolfe Londoner and Dennis Sheedy, because each thereof was assessed for the paving and other improvements in this district alone for more than the several lots so assessed were ever actually worth and far in excess of any special benefits received from the alleged improvements."

These assignments will be passed upon in the order in which they seem to arise in the consideration of the whole case.

The tax complained of was assessed under the provisions of the charter of the city of Denver, which confers upon the city the power to make local improvements and to assess the cost upon property specially benefited. It does not seem necessary to set forth fully the elaborate provisions of the charter regulating the exercise of this power, except where they call for special examination. The board of public works, upon the petition of a majority of the owners of the frontage to be assessed, may order the paving of a street. The board must, however, first adopt specifications, mark out a district of assess-

ment, cause a map to be made and an estimate of the cost, with the approximate amount to be assessed upon each lot of land. Before action notice by publication and an opportunity to be heard to any person interested must be given by the board.

The board may then order the improvement, but must recommend to the city council a form of ordinance authorizing it, and establishing an assessment district, which is not amendable by the council. The council may then, in its discretion, pass or refuse to pass the ordinance. If the ordinance is passed, the contract for the work is made by the mayor. The charter provides that "the finding of the city council, by ordinance, that any improvements provided for in this article were duly ordered after notice duly given, or that a petition or remonstrance was or was not filed as above provided, or was or was not subscribed by the required number of owners aforesaid shall be conclusive in every court or other tribunal." The charter then provides for the assessment of the cost in the following sections:

"SEC. 29. Upon completion of any local improvement, or, in the case of sewers, upon completion from time to time of any part or parts thereof, affording complete drainage for any part or parts of the district and acceptance thereof by the board of public works, or whenever the total cost of any such improvement, or of any such part or parts of any sewer, can be definitely ascertained, the board of public works shall prepare a statement therein showing the whole cost of the improvement, or such parts thereof, including six per cent additional for costs of collection and other incidentals, and interest to the next succeeding date upon which general taxes, or the first installment thereof, are by the laws of this State made payable; and apportioning the same upon each lot or tract of land to be assessed for the same, as hereinabove provided; and shall cause the same to be certified by the president and filed in the office of the city clerk.

"SEC. 30. The city clerk shall thereupon, by advertisement for ten days in some newspaper of general circulation, published

in the city of Denver, notify the owners of the real estate to be assessed that said improvements have been, or are about to be, completed and accepted, therein specifying the whole cost of the improvements and the share so apportioned to each lot or tract of land; and that any complaints or objections that may be made in writing, by the owners, to the city council and filed with the city clerk within thirty days from the first publication of such notice, will be heard and determined by the city council before the passage of any ordinance assessing the cost of said improvements.

"Sec. 31. After the period specified in said notice the city council, sitting as a board of equalization, shall hear and determine all such complaints and objections, and may recommend to the board of public works any modification of the apportionments made by said board; the board may thereupon make such modifications and changes as to them may seem equitable and just, or may confirm the first apportionment, and shall notify the city council of their final decision; and the city council shall thereupon by ordinance assess the cost of said improvements against all the real estate in said district respectively in the proportions above mentioned."

It appears from the charter that, in the execution of the power to make local improvements and assess the cost upon the property specially benefited, the main steps to be taken by the city authorities are plainly marked and separated: 1. The board of public works must transmit to the city council a resolution ordering the work to be done and the form of an ordinance authorizing it and creating an assessment district. This it can do only upon certain conditions, one of which is that there shall first be filed a petition asking the improvement, signed by the owners of the majority of the frontage to be assessed. 2. The passage of that ordinance by the city council, which is given authority to determine conclusively whether the action of the board was duly taken. 3. The assessment of the cost upon the landowners after due notice and opportunity for hearing.

In the case before us the board took the first step by transmitting to the council the resolution to do the work and the form of an ordinance authorizing it. It is contended, however, that there was wanting an essential condition of the jurisdiction of the board, namely, such a petition from the owners as the law requires. The trial court found this contention to be true. But, as has been seen, the charter gave the city council the authority to determine conclusively that the improvements were duly ordered by the board after due notice and a proper petition. In the exercise of this authority the city council, in the ordinance directing the improvement to be made, adjudged, in effect, that a proper petition had been filed. That ordinance, after reciting a compliance by the board with the charter in other respects, and that "certain petitions for said improvements were first presented to the said board, subscribed by the owners of a majority of the frontage to be assessed for said improvements as by the city charter required," enacted "That upon consideration of the premises the city council doth find that in their action and proceedings in relation to said Eighth Avenue Paving District Number One the said board of public works has fully complied with the requirements of the city charter relating thereto." The state Supreme Court held that the determination of the city council was conclusive that a proper petition was filed, and that decision must be accepted by us as the law of the State. The only question for this court is whether the charter provision authorizing such a finding, without notice to the landowners, denies to them due process of law. We think it does not. The proceedings, from the beginning up to and including the passage of the ordinance authorizing the work did not include any assessment or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done without hearing to the landowners, provided a hearing upon the assessment itself is afforded. *Voigt* v. *Detroit*, 184 U. S. 115; *Goodrich* v. *Detroit*, 184 U. S. 432. The

legislature might have authorized the making of improvements by the city council without any petition. If it chose to exact a petition as a security for wise and just action it could, so far as the Federal Constitution is concerned, accompany that condition with a provision that the council, with or without notice, should determine finally whether it had been performed. This disposes of the first assignment of error, which is overruled. The second assignment is that the court erred in deciding that the city council had determined that the board of public works had complied with the conditions of its jurisdiction to order the work done. It is enough to say that this is not a Federal question.

We see nothing in the sixth assignment of error. It is apparently based upon the proposition that, in construing a law of the State in a manner which the plaintiffs in error think was clearly erroneous, the Supreme Court of the State exercised legislative power, and thereby violated the Fourteenth Amendment. We are puzzled to find any other answer to this proposition than to say that it is founded upon a misconception of the opinion of the court and of the effect of the Fourteenth Amendment. The complaint in this assignment is not that the court gave a construction to the law which brought it into conflict with the Federal Constitution, but that, in construing the law so as to bring it into harmony with the Federal and state constitutions, the court so far neglected its obvious meaning as to make the judgment an exercise of legislative power. We know of nothing in the Fourteenth Amendment which gives us authority to consider a question of this kind. We think it fitting, however, to say that we see nothing extraordinary in the method of interpretation followed by the court, or in its results. Whether we should or not have arrived at the same conclusions is not of consequence.

The ninth assignment questions the constitutionality of that part of the law which authorizes the assessment of benefits. It seems desirable, for the proper disposition of this and the next assignment, to state the construction which the Supreme

Court gave to the charter. This may be found in the judgment under review and two cases decided with it. *Denver* v. *Kennedy*, 33 Colorado, 80; *Denver* v. *Dumars*, 33 Colorado, 94. From these cases it appears that the lien upon the adjoining land arises. out of the assessment; after the cost of the work and the provisional apportionment is certified to the city council the landowners affected are afforded an opportunity to be heard upon the validity and amount of the assessment by the council sitting as a board of equalization; if any further notice than the notice to file complaints and objections is required, the city authorities have the implied power to give it; the hearing must be before the assessment is made; this hearing, provided for by § 31, is one where the board of equalization "shall hear the parties complaining and such testimony as they may offer in support of their complaints and objections as would be competent and relevant," 33 Colorado, 97; and that the full hearing before the board of equalization excludes the courts from entertaining any objections which are cognizable by this board. The statute itself therefore is clear of all constitutional faults. It remains to see how it was administered in the case at bar.

The fifth assignment, though general, vague and obscure, fairly raises, we think, the question whether the assessment was made without notice and opportunity for hearing to those affected by it, thereby denying to them due process of law. The trial court found as a fact that no opportunity for hearing was afforded, and the Supreme Court did not disturb this finding. The record discloses what was actually done, and there seems to be no dispute about it. After the improvement was completed the board of public works, in compliance with § 29 of the charter, certified to the city clerk a statement of the cost, and an apportionment of it to the lots of land to be assessed. Thereupon the city clerk, in compliance with § 30, published a notice stating, *inter alia*, that the written complaints or objections of the owners, if filed within thirty days, would be "heard and determined by the city council before the pas-

sage of any ordinance assessing the cost." Those interested, therefore, were informed that if they reduced their complaints and objections to writing, and filed them within thirty days, those complaints and objections would be heard, and would be heard before any assessment was made. The notice given in this case, although following the words of the statute, did not fix the time for hearing, and apparently there were no stated sittings of the council acting as a board of equalization. But the notice purported only to fix the time for filing the complaints and objections, and to inform those who should file them that they would be heard before action. The statute expressly required no other notice, but it was sustained in the court below on the authority of *Paulsen* v. *Portland,* 149 U. S. 30, because there was an implied power in the city council to give notice of the time for hearing. We think that the court rightly conceived the meaning of that case and that the statute could be sustained only upon the theory drawn from it. Resting upon the assurance that they would be heard, the plaintiffs in error filed within the thirty days the following paper:

"Denver, Colorado, January 13, 1900.
"To the Honorable Board of Public Works and the Honorable
    Mayor and City Council of the City of Denver:
"The undersigned, by Joshua Grozier, their attorney, do hereby· most earnestly and strenuously protest and object to the passage of the contemplated or any assessing ordinance against the property in Eighth Avenue Paving District No. 1, so called, for each of the following reasons, to wit:
"1st. That said assessment and all and each of the proceedings leading up to the same were and are illegal, voidable and void, and the attempted assessment if made will be void and uncollectible.
"2nd. That said assessment and the cost of said pretended improvement should be collected, if at all, as a general tax against the city at large and not as a special assessment.

"3d. That property in said city not assessed is benefited by the said pretended improvement and certain property assessed is not benefited by said pretended improvement and other property assessed is not benefited by said pretended improvement to the extent of the assessment; that the individual pieces of property in said district are not benefited to the extent assessed against them and each of them respectively; that the assessment is abitrary and property assessed in an equal amount is not benefited equally; that the boundaries of said pretended district were arbitrarily created without regard to the benefits or any other method of assessment known to law; that said assessment is outrageously large.

"4th. That each of the laws and each section thereof under which the proceedings in said pretended district were attempted to be had do not confer the authority for such proceedings; that the 1893 city charter was not properly passed and is not a law of the State of Colorado by reason of not properly or at all passing the legislature; that each of the provisions of said charter under which said proceedings were attempted are unconstitutional and violative of fundamental principles of law, the Constitution of the United States and the state constitution, or some one or more of the provisions of one or more of the same.

"5th. Because the pretended notice of assessment is invalid and was not published in accordance with the law, and is in fact no notice at all; because there was and is no valid ordinance creating said district; because each notice required by the 1893 city charter to be given, where it was attempted to give such notice, was insufficient, and was not properly given or properly published.

"6th. Because of non-compliance by the contractor with his contract and failure to complete the work in accordance with the contract; because the contract for said work was let without right or authority; because said pretended district is incomplete and the work under said contract has not been completed in accordance with said contract; because items too

numerous to mention, which were not a proper charge in the said assessment, are included therein.

"7th. Because the work was done under pretended grants of authority contained in pretended laws, which laws were violative of the constitution and fundamental laws of the State and Union.

"8th. Because the city had no jurisdiction in the premises. No petition subscribed by the owners of a majority of the frontage in the district to be assessed for said improvements was ever obtained or presented.

"9th. Because of delay by the board of public works in attempting to let the contract and because the said pretended improvement was never properly nor sufficiently petitioned for; because the contracts were not let nor the work done in accordance with the petitions, if any, for the work, and because the city had no jurisdiction in the premises.

"10th. Because before ordering the pretended improvement full details and specifications for the same, permitting and encouraging competition and determining the number of installments and time within which the costs shall be payable, the rate of interest on unpaid installments, and the district of lands to be assessed, together with a map showing the approximate amounts to be assessed, were not adopted by the board of public works before the letting of the contract for the work and furnishing of material; because advertisement for 20 days in two daily newspapers of general circulation, giving notice to the owners of real estate in the district of the kind of improvements proposed, the number of installments and time in which payable, rate of interest and extent of the district, probable cost and time when a resolution ordering the improvement would be considered, was not made either properly or at all, and if ever attempted to be made was not made according to law or as required by the law or charter.

"11th. Because the attempted advertisement for bids on the contract attempted to be let were not properly published and were published and let, and the proceedings had, if at all,

in such a way as to be prejudicial to the competition of bidders and to deter bidders; and the completion of the contracts after being attempted to be let was permitted to lag in such a manner as not to comply with the contract, charter or laws, and the power to let the contract attempted to be let was not within the power of the parties attempting to let the same; because the city council is or was by some of the proceedings deprived of legislative discretion, and the board of public works and other pretended bodies given such discretion, which discretion they delegated to others having no right or power to exercise the same; and executive functions were conferred on bodies having no right, power or authority to exercise the same and taken away from others to whom such power was attempted to be granted or given or who should properly exercise the same; that judicial power was attempted to be conferred on the board of public works, so called, and the city council, and other bodies or pretended bodies not judicial or *quasi*-judicial in character, having no right, power or authority to exercise the same, and the courts attempted to be deprived thereof.

"Wherefore, because of the foregoing and numerous other good and sufficient reasons, the undersigned object and protest against the passage of the said proposed assessing ordinance."

This certainly was a complaint against and objection to the proposed assessment. Instead of affording the plaintiffs in error an opportunity to be heard upon its allegations, the city council, without notice to them, met as a board of equalization, not in a stated but in a specially called session, and, without any hearing, adopted the following resolution:

"Whereas, complaints have been filed by the various persons and firms as the owners of real estate included within the Eighth Avenue Paving District No. 1, of the city of Denver against the proposed assessments on said property for the cost of said paving, the names and description of the real estate respectively owned by such persons being more particularly described in the various complaints filed with the city clerk; and

"Whereas, no complaint or objection has been filed or made

against the apportionment of said assessment made by the board of public works of the city of Denver, but the complaints and objections filed deny wholly the right of the city to assess any district or portion of the assessable property of the city of Denver; therefore, be it

"Resolved, by the city council of the city of Denver, sitting as a board of equalization, that the apportionments of said assessment made by said board of public works be, and the same are hereby, confirmed and approved."

Subsequently, without further notice or hearing, the city council enacted the ordinance of assessment whose validity is to be determined in this case. The facts out of which the question on this assignment arises may be compressed into small compass. The first step in the assessment proceedings was by the certificate of the board of public works of the cost of the improvement and a preliminary apportionment of it. The last step was the enactment of the assessment ordinance. From beginning to end of the proceedings the landowners, although allowed to formulate and file complaints and objections, were not afforded an opportunity to be heard upon them. Upon these facts was there a denial by the State of the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States?

In the assessment, apportionment and collection of taxes upon property within their jurisdiction the Constitution of the United States imposes few restrictions upon the States. In the enforcement of such restrictions as the Constitution does impose this court has regarded substance and not form. But where the legislature of a State, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place

of the hearing. *Hager* v. *Reclamation District*, 111 U. S. 701; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Winona & St. Peter Land Co.* v. *Minnesota*, 159 U. S. 526, 537; *Lent* v. *Tillson*, 140 U. S. 316; *Glidden* v. *Harrington*, 189 U. S. 255; *Hibben* v. *Smith*, 191 U. S. 310; *Security Trust Co.* v. *Lexington*, 203 U. S. 323; *Central of Georgia* v. *Wright*, 207 U. S. 127. It must be remembered that the law of Colorado denies the landowner the right to object in the courts to the assessment, upon the ground that the objections are cognizable only by the board of equalization.

If it is enough that, under such circumstances, an opportunity is given to submit in writing all objections to and complaints of the tax to the board, then there was a hearing afforded in the case at bar. But we think that something more than that, even in proceedings for taxation, is required by due process of law. Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal. *Pittsburg &c. Railway Co.* v. *Backus*, 154 U. S. 421, 426; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 171, *et seq.* It is apparent that such a hearing was denied to the plaintiffs in error. The denial was by the city council, which, while acting as a board of equalization, represents the State. *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20. The assessment was therefore void, and the plaintiffs in error were entitled to a decree discharging their lands from a lien on account of it. It is not now necessary to consider the tenth assignment of error.

*Judgment reversed.*

THE CHIEF JUSTICE and MR. JUSTICE HOLMES dissent.