Mr. Justice Bobb
delivered the opinion of the Court:
As noted in Garfield v. United States, 32 App. D. C. 109, 133, prior to the act of July 4, 1884 (23 Stat. at L. 98, chap. 181), the regulation and control of agents and attorneys before the Pension Bureau “seemed to have been governed exclusively by the regulations adopted by the Secretary.” How the act of 1884 came to be passed is explained in the Stevens Case, and, *50 owing to the view we take of that act, it is unnecessary to consider whether it constitutes anything more than a legislative sanction of the practice theretofore existing. Prior to the passage of the act, the Secretary certainly had the power to prescribe rules governing the conduct of agents and attorneys in his Department (sec. 161, Rev. Stat. U. S. Comp. Stat. 1901, p. 80). This would seem to include the power to exclude such agents and attorneys as the Secretary, after notice and hearing, should find no longer entitled to enjoy the privileges theretofore granted.
Sec. 5 of said act of 1884 in terms authorizes the Secretary to prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing claimants before his Department, to require that they show “that they are of good moral character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their claims,” and further authorizes the Secretary, “after notice and opportunity for a hearing,” to suspend or exclude from further practice before his Department “any such person, agent, or attorney shown to be incompetent, disreputable, or who refuses to comply with the said rules and regulations,” etc.
It is insisted that said act is void because it makes no provision in reference to administering oaths to witnesses testifying at the hearings therein mentioned, and, further, because no provision is made for summoning witnesses to appear at said hearings. Both contentions must fail. The right to appear before the Interior Department is not an inherent right, but a privilege granted by law and subject to such limitations and conditions as are necessary for the protection both of the Department and the public, and while it is a valuable privilege, proceedings looking to its curtailment or withdrawal are essentially civil in their nature. It has even been held that a summary proceeding against an attorney to exclude him from the practice of his profession, on account of acts for which he may be indicted and tried, is due process of law. Ex parte Wall, *51 107 U. S. 266, 27 L. ed. 553, 2 Sup. Ct. Rep. 569. All that is required in the proceeding to which the statute refers is that the person affected should have due notice, full knowledge of the charge, an opportunity to rebut the charge by proof, and an opportunity for a hearing. In Londoner v. Denver, 210 U. S. 373, 52 L. ed. 1103, 28 Sup. Ct. Rep. 708, a tax case, the court said: “Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument, however brief, and, if need be, by proof, however informal.”
Under sec. 3929, Rev. Stat., U. S. Comp. Stat. 1901, p. 2686, the Postmaster General “may, upon evidence satisfactory to him,” etc., in effect withdraw the privilege of the use of the mails from any person. It is apparent, we think, that such a privilege is at least as valuable as the privilege of appearing before the Interior Department, and yet no provision whatever is made for summoning witnesses or for administering oaths to those who may voluntarily appear. In Public Clearing House v. Coyne, 194 U. S. 497, 48 L. ed. 1092, 24 Sup. Ct. Rep. 789, the constitutionality of said section was assailed upon the-ground, among others, that it provided for no judicial hearing. The court sustained the law, saying: “It is too late to argue-that due process of law is denied whenever the disposition of property is affected by the order of an-executive department.”'
In Hitchcock v. Smith, 34 App. D. C. 521, involving a hearing the object of which was the withdrawal of the privilege-theretofore accorded a publisher of sending his publication-through the mails as second class matter, the court said: “The-next question is whether appellees were accorded a hearing.. In determining this question it must be remembered that no-fixed and arbitrary rule has been laid down, and that hearings; of such a nature are necessarily much more informal than; judicial hearings. Palmer v. McMahon, 133 U. S. 660, 33 L. ed. 772, 10 Sup. Ct. Rep. 324. Due process of law, in a. case like the present, is had when full opportunity is presentedi *52 to introduce all the evidence and arguments which the party interested deems important, and to be confronted with witnesses against him, he having had notice of the question at issue.”
The objection that the act is void because of the use of the word “disreputable” is met in the opinion of this court in Garfield v. United States, 32 App. D. C. 109. The court there said that the word was probably used “as the equivalent of unprofessional, and as applying more appropriately to agents and other persons who, as well as attorneys, might be permitted to practise before the Department. The courts were possessed of the inherent power, at the common law, to inquire into the conduct of attorneys admitted to practise before them, and to disbar them when found guilty of unprofessional conduct. The term was well understood by them and by the attorneys in general, and there was no more practical uncertainty in its application than in that of the word “defraud,” which is so commonly used in criminal statutes without definition. Any conduct violative of the ordinary standard of professional obligation and honor was unprofessional and disreputable.”
We rule, therefore, that due process of law is satisfied by the provisions of the statute under consideration.
The relator, however, insisted that he is entitled to invoke the aid of a court of equity, because, as he contends, illegal evidence was adduced before the Commissioner of Pensions, and, in the absence of such illegal evidence, there is nothing before the Secretary of the Interior “upon which he could base a legal and valid order of disbarment against the plaintiff;” in other words, we are asked to assume in advance that the Secretary of the Interior, upon whom devolves the responsibility of passing upon the question whether complainant shall be suspended or excluded from further practice before his Department, will not be governed by law. This assumption we cannot entertain. On the contrary, we must presume that the Secretary will be governed by established rules, and that he will accord complainant a fair and impartial hearing. Spring Valley Waterworks v. Schottler, 110 U. S. 347, 28 L. ed. 113, 4 Sup. Ct. Rep. 48. *53 Aside from the disputed evidence, complainant’s bill shows that the charges against him were in part based upon letters written by him, the character of which it is not necessary here to consider. Complainant’s averment that, aside from the disputed evidence, there is nothing before the Secretary upon which he may base “a legal and valid order of disbarment,” is a mere conclusion. That is primarily a question for the Secretary’s determination, and is not to be thus summarily disposed of.
Decree affirmed, with costs. Affirmed.
On application of the appellant an appeal to the Supreme Court of the United States was allowed.