## BISING v CINCINNATI (city) et

Ohio Appeals, 1st Dist, Hamilton Co

No 3960. Decided April 4, 1932

John Weld Peck, Cincinnati, Edgar W. Cist, Cincinnati, and Walter M. Schoenle, Cincinnati, for plaintiff.

John D. Ellis, City Solicitor, Cincinnati, and John J. O'Donnel, Ass't City Solicitor, Cincinnati, for defendants.

HAMILTON, J.

On March 25, 1925, the General Assembly of Ohio enacted §4676-1, GC, which section provides:

"Municipal corporations now or hereafter operating under a special charter adopted in accordance with the constitution of the state of Ohio, which charter provides for or authorizes in whole or in part a method of procedure in the passage and publication of legislation, the making of improvements and the levying of assessments differing from the method prescribed by general law, may pass and publish such legislation, make such improvements and levy such assessments either under the provisions of the general law or in accordance with the procedure so provided for or authorized by such local charter. Assessments so levied by charter municipalities shall, as to their amount, be subject to the limitations, whether based on percentages of value of land to be assessed, proportion of cost and expense of the improvement, or other basis, fixed by general law. Provided that no municipal corporation shall in any wise be exempted from the provisions of an act entitled 'H.B. No. 175 (§§5649-9 to 5649-9f GC), an act to provide for the issue of bonds by local subdivisions, and to amend §3941 GC relating thereto', if and when the same shall become effective."

Subsequent to the enactment of §4676-1, GC, the people of the City of Cincinnati, at an election held November 6, 1926, adopted

a charter form of government for the City, which became effective January 1, 1927.

Section 1 of Article II of the Charter reads:

"All legislative powers of the city shall be vested, subject to the terms of this charter and of the constitution of the state of Ohio, in the council. The laws of the state of Ohio not inconsistent with this charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution the provisions of the ordinance or resolution shall prevail and control."

Section 6 of Article II provides:

"Every ordinance shall be published once within fifteen days after its passage in a newspaper of general circulation in the city of Cincinnati, **or a newspaper regularly published under the authority of council.** In the publication of every ordinance or resolution relating to improvements or to assessments upon private property for such improvements, the advertisement shall contain simply a statement of the title, number and date of the ordinance and resolution, a concise description of the private property affected, a summary of the nature of the improvements, the rate of any assessment levied or to be levied, and a reference to a copy of the said ordinance or resolution, which shall be on file in the office of the clerk of council."

By virtue of the authority conferred on it by §1, Article II of the City Charter, Council enacted §§48 and 48-3 of the Code of Ordinances.

"Section 48. City Bulletin. There is hereby established an official newspaper of the city of Cincinnati which shall be known as The City Bulletin, and which shall be regularly published once each week."

"Section 48-3. Contents of Bulletin. The City Bulletin shall contain all ordinances and resolutions which are passed by council; all resolutions adopted by the various boards and commissions of the city; all notices, announcements and advertisements required by law or ordinance to be published and which can be legally published in said The City Bulletin; official reports of the proceedings of council; information concerning the official actions of all de-

partments, boards and commissions of the city; proposals for bids for public contracts and such other matters as council may authorize."

The publication of the notice of the filing of the estimates by the Estimating Board was in accordance with the authorization of the statute, the charter, and the ordinances passed thereunder. If these provisions are valid and controlling enactments, the publication of the notice in question was sufficient upon which council could pass a valid assessing ordinance.

It is claimed that the language used in §4676-1, GC, limits the procedure in assessments to charter provisions.

It is true, as heretofore quoted, that the section provides that: "Municipal corporations now or hereafter operating under a special charter adopted in accordance with the constitution of the state of Ohio, which charter provides for or authorizes in whole or in part a method of procedure in the passage and publication of legislation * * * may pass and publish such legislation, make such improvements and levy such assessments either under the provisions of the general law or in accordance with the procedure so provided for or authorized by such local charter. * * *"

It is also true that §6 of Article II of the charter provisions provides only for procedure different from that provided by general laws, in that it only mentions ordinances and resolutions, and does not specifically provide for publishing of notices of the filing of estimates for assessment purposes. This would probably be giving a narrow interpretation to the meaning of the charter. It is generally held that the term "ordinance or resolution" includes all written action of legislative bodies.

The situation as to the construction of the provision of the charter is clarified by the enactment of §48-3 of the Code of Ordinances, which does provide for the publication of such notices.

It is argued that ordinance No. 48-3 is ineffective to establish a method of publication different from §3895, GC; that such a procedure must be voted upon by the people as a charter amendment.

It must be borne in mind that the Charter does provide that: "All legislative powers of the city shall be vested, subject to the terms of this charter and of the constitution of the state of Ohio, in the council." Council, acting under that delegation of power, and under authority of §4676-1, GC, enacted §§48 and 48-3 of the Code of

Ordinances. The notice was published by order of council.

It is contended that if §4676-1 GC, is applicable, empowering council to enact §§48 and 48-3 of the Code of Ordinances, it is unconstitutional, for the claimed reason that laws relating to assessments are laws of a general nature and must have uniform operation throughout the state. That §4676-1 GC purports to authorize charter cities to provide a method of advertising different from that required of non-charter cities, and would, therefore, have no uniformity in its application. The answer to this is, that if it is a law of a general nature, it applies generally to all charter cities. If it is a special act for charter cities, uniformity would not be necessary, since it applies only to procedure in charter cities.

On the question of uniformity, we cannot overlook the fact that in the case of **State ex City of Toledo v Weiler, et, 101 Oh St, 123**, the Supreme Court of Ohio in a proceeding in mandamus did order the publication of an ordinance of the City of Toledo in a paper known as the "Toledo City Journal." While the exact question was not presented, it is unreasonable to presume that had the publication contravened the constitution, the court would not have ordered the publication in the "Toledo City Journal," as it did. The ordinance in question in the Weiler case was for the issuance of bonds for the purpose of acquiring a public utility, and was a matter of great importance.

It is claimed that §3895, GC, prevails, despite the charter and the ordinances. This is claimed by virtue of §6 of Article XIII of the Constitution of Ohio, which directs that:

"The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws; and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power."

Counsel seeks to apply this on the question of procedure to assess abutting property for a public improvement, and assumes that to validate such an assessment, the procedure for assessment must be provided by the General Assembly. That the legislature having passed §3895, GC, a restriction is laid on all procedure to enact valid assessments. That the General Assembly having enacted §3895, GC, the charter or ordinances of the City cannot relieve council from following the requirements as to notice prescribed by §3895, GC. Counsel cite: **Berry et v City of Columbus, 104 Oh St, 607; State ex Osborne, etc. v Williams, 111 Oh St, 400; and State ex Toledo v Cooper, Auditor, 97 Oh St, 86.** These cases, however, were decided prior to the enactment of §4676-1, GC. The enactment of §4676-1 GC is in accordance with the provisions of §6 of Article XIII of the Constitution of Ohio. The fact that §4676-1 GC delegates a charter city the authority to enact a system of procedure is but the passage of a general law, affecting charter cities, and does not offend against §6 of Article XIII, as to the restriction of the power of assessment. While it is true in the case of Berry v City of Columbus, supra, the Supreme Court held that the "Home Rule Amendment," under Article XVIII has not repealed §6 of Article XIII, that decision is not in point in the instant case. The question here is not restriction of assessments. It is procedure.

Further, the charter of the City of Cincinnati, enacted under constitutional powers, provided, §1 of Article II, as above quoted, that: "in the event of conflict between any such law and any municipal ordinance or resolution, the provisions of the ordinance or resolution shall prevail and control."

It is argued that Ordinance No. 48-3 is not in conflict with §3895, GC, and authority is cited that in order that there be a conflict between the statutes and the ordinances, the one must permit what the other forbids, or vice versa, citing **Village of Struthers v Sokel and City of Youngstown v Sandela, 108 Oh St, 263.**

We are of opinion that there is a conflict between §3895 GC and §§48 and 48-3 of the Code of Ordinances of the City of Cincinnati. §3895, GC forbids council from passing the assessing ordinance, based upon the estimates filed by the Estimating Board unless and until publication of the assessing notice has been published in a newspaper of general circulation for the time named.

Under §§ 48 and 48-3 of the Code of Ordinances, council is authorized to pass assessing ordinances upon publication of notice in "The City Bulletin," not a newspaper of general circulation, and for a period of time different from that provided in §3895 GC. The test, if necessary, is met.

While we have not passed upon the questions suggested ad seriatim, what we have

said applies in substance to all of the objections.

It appears to us that the serious question in the case is, whether or not the notice published is such insufficient notice as would contravene the rights of the plaintiff under the 14th Amendment of the Constitution of the United States. Notice and an opportunity to be heard upon the amount of the assessment are jurisdictional, and necessary to the requirements of the due process of law, as guaranteed by the 14th Amendment.

It has been decided by the Supreme Court of Ohio in the case of **Bashore v Brown, Treasurer, 108 Oh St, 18**, that the provision of law giving the owner the right to file objections to assessments "furnish the owner an adequate remedy at law, which, if the proceedings are otherwise legal, he must pursue before resorting to a court of equity for relief." Therefore, if the plaintiff in this case failed to file objections to the assessment if the proceedings are otherwise legal, she has no remedy in a court of equity.

In the case of Londoner v City and County of Denver, 210 U. S., 373, it is stated in the fourth paragraph of the syllabus:

."There are few constitutional restrictions on the power of the States to assess, apportion and collect taxes, and in the enforcement of such restrictions this court has regard to substance and not form, but where the legislature commits the determination of the tax to a subordinate body, due process of law requires that the taxpayer be afforded a hearing of which he must have notice, and this requirement is not satisfied by the mere right to file objections; and where, as in Colorado, the taxpayer has no right to object to an assessment in court, due process of law as guaranteed by the Fourteenth Amendment requires that he have the opportunity to support his objections by argument and proof at some time and place."

The constitutional question suggested must be considered on the theory that the publication was a notice in "The City Bulletin," but with its limited circulation, was an insufficient notice.

It would be difficult for the court to determine the effect of a publication in a newspaper. If the plaintiff was a subscriber, she would have more opportunity to note the publication concerning her property than if the notice was published in a newspaper of which she was not a subscriber.

The legislature of the state provides for publication in a newspaper of general circulation for a certain length of time. If the publication had been made in a newspaper of general circulation, it would be no assurance that the plaintiff would see the notice.

It may be conceded that a newspaper with a large circulation would more probably reach a property owner than one of a limited circulation. It would seem that this question is legislative and not judicial. We are not considering that "The City Bulletin" is a newspaper of general circulation. We are considering it from the standpoint of a newspaper of very limited circulation. Just how much publicity must be given to a notice to meet the requirements of the Fourteenth Amendment as to due process of law is a serious question.

In view of the fact that the power of legislative bodies to provide for newspaper publication of matters affecting property rights has not been challenged in any reported case, we are inclined to let the matter rest as a question of legislative discretion, which in the instant case was exercised by Council, the City's legislative body.

Our conclusion is that the failure to publish the notice in accordance with §3895, GC, does not invalidate the assessment and the petition is dismissed.

ROSS, PJ, and CUSHING, J, concur.