ZACHARY, Judge.
 

 *3
 

 *50
 
 The issue presented is whether the due process clause of the Fourteenth Amendment requires that the applicant be afforded an
 
 *51
 
 opportunity for an evidentiary hearing to contest the denial of his application for renewal of a Concealed Handgun Permit pursuant to
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3). We conclude that it does.
 

 I. Factual Background
 

 On 9 September 2016, Petitioner Daniel Ryan DeBruhl submitted an application for the renewal of his Concealed Handgun Permit to the Mecklenburg County Sheriff's Office. A veteran of the United States military, Petitioner had maintained a Concealed Handgun Permit for ten years prior to submitting his renewal application. The Sheriff's Office issued a perfunctory denial of Petitioner's application for renewal on 14 December 2016, without notice of the nature of or basis for the denial or any opportunity for Petitioner to be heard on the allegations against him.
 

 The communication that advised Petitioner of the denial contained the following information:
 

 It is found that your actions for the following constitute a violation of the provisions set forth in the North Carolina General Statute 14-415.12 for the possession of a concealed handgun permit.
 

 Your application for a concealed handgun permit has been denied for the following reasons:
 

 [N.C. Gen. Stat. §] 14-415.12(a) -Does not meet the requirements for application
 

 [N.C. Gen. Stat. §] 14-415.12(b)(1) -Ineligible to own, possess, or receive firearm under State or Federal Law
 

 YOU ARE DENIED DUE TO INFORMATION RECEIVED FROM VETERANS AFFAIRS.
 

 Petitioner appealed the Sheriff's decision to the district court on 6 March 2017, but complained that "there is no way for Petitioner to know what facts to challenge on appeal" because of the lack of facts "provided in the Denial". After "having reviewed [Petitioner's] criminal background and other relevant information," the Honorable Regan A. Miller entered an order "Denying Appeal For A Concealed Handgun Permit" on 24 April 2017. In Finding of Fact No. 5, the trial court concluded that the Sheriff's Office "denied [Petitioner] a Concealed Handgun Permit because [Petitioner] sought or received mental health and/or substance abuse treatment in 2016," although Petitioner had not previously been
 
 *52
 
 adjudicated to be mentally ill. In Finding of Fact No. 6, the district court found that Petitioner "suffers from a mental health disorder that affects his ability to safely handle a firearm."
 
 [1]
 
 Based on these findings, the district court concluded that "[t]he Sheriff's decision was a reasoned and reasonable decision[,]" and affirmed the denial of Petitioner's Concealed Handgun Permit renewal application. Petitioner was not afforded any opportunity to be heard on the matter before the court entered its order.
 

 Petitioner filed notice of appeal to this Court on 30 May 2017. On appeal, Petitioner argues that "the district court's finding of fact that petitioner suffers from a mental health disorder was improper absent a formal adjudicatory hearing regarding petitioner's mental competency and violates petitioner's due process rights." In the alternative, Petitioner argues that the district court's "application of section N.C.G.S. § 14-415.12(a)(3) is overbroad, contrary to statutory construction and encompasses a myriad of protected activities under the Second Amendment of the United States Constitution."
 

 We find Petitioner's due process claim dispositive.
 

 II. North Carolina Statutory Framework
 

 In North Carolina, "[a]ny person who has a concealed handgun permit may carry a
 
 *4
 
 concealed handgun unless otherwise specifically prohibited by law."
 
 N.C. Gen. Stat. § 14-415.11
 
 (a) (2017). The criteria for obtaining a Concealed Handgun Permit are set forth in
 
 N.C. Gen. Stat. § 14-415.12
 
 . A permit is obtained from the local sheriff and once issued is valid for five years.
 
 N.C. Gen. Stat. § 14-415.11
 
 (b) (2017). If an individual applies to renew his Concealed Handgun Permit, the sheriff must determine whether that individual "remains qualified to hold a permit in accordance with the provisions of G.S. 14-415.12."
 
 N.C. Gen. Stat. § 14-415.16
 
 (c) (2017).
 

 N.C. Gen. Stat. § 14-415.12
 
 provides that a sheriff "shall issue" a Concealed Handgun Permit to an applicant so long as "the applicant qualifies under the following criteria:"
 

 (a) ...
 

 (1) The applicant is a citizen of the United States or has been lawfully admitted for permanent residence ...
 

 *53
 
 and has been a resident of the State 30 days or longer immediately preceding the filing of the application.
 

 (2) The applicant is 21 years of age or older.
 

 (3) The applicant does not suffer from a physical or mental infirmity that prevents the safe handling of a handgun.
 

 (4) The applicant has successfully completed an approved firearms safety and training course which involves the actual firing of handguns and instruction in the laws of this State governing the carrying of a concealed handgun and the use of deadly force. The North Carolina Criminal Justice Education and Training Standards Commission shall prepare and publish general guidelines for courses and qualifications of instructors which would satisfy the requirements of this subdivision. An approved course shall be any course which satisfies the requirements of this subdivision and is certified or sponsored by:
 

 a. The North Carolina Criminal Justice Education and Training Standards Commission,
 

 b. The National Rifle Association, or
 

 c. A law enforcement agency, college, private or public institution or organization, or firearms training school, taught by instructors certified by the North Carolina Criminal Justice Education and Training Standards Commission or the National Rifle Association.
 

 Every instructor of an approved course shall file a copy of the firearms course description, outline, and proof of certification annually, or upon modification of the course if more frequently, with the North Carolina Criminal Justice Education and Training Standards Commission.
 

 (5) The applicant is not disqualified under subsection (b) of this section.
 

 N.C. Gen. Stat. § 14-415.12
 
 (a) (2017). Even where the applicant satisfies subsections (a)(1)-(4) above, however,
 

 *54
 
 (b) The sheriff shall deny a permit to an applicant who:
 

 (1) Is ineligible to own, possess, or receive a firearm under the provisions of State or Federal law.
 

 (2) Is under indictment or against whom a finding of probable cause exists for a felony.
 

 (3) Has been adjudicated guilty in any court of a felony....
 

 ...
 

 (6) Is currently, or has been previously adjudicated by a court or administratively determined by a governmental agency whose decisions are subject to judicial review to be, lacking mental capacity or mentally ill. Receipt of previous consultative services or outpatient treatment alone shall not disqualify an applicant under this subdivision.
 

 ...
 

 (8) Except as provided in subdivision (8a), (8b), or (8c) of this section, is or has been adjudicated guilty of ... one or more crimes of violence constituting a misdemeanor ... within three years prior
 
 *5
 
 to the date on which the application is submitted.
 

 N.C. Gen. Stat. § 14-415.12
 
 (b) (2017).
 

 The statute thus includes two provisions related to mental health:
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3) and
 
 N.C. Gen. Stat. § 14-415.12
 
 (b)(6). The critical distinction between the two subsections is the requirement of a prior adjudicatory hearing. Under
 
 N.C. Gen. Stat. § 14-415.12
 
 (b)(6), if an applicant has been adjudicated to be "lacking mental capacity or mentally ill[,]" the sheriff must deny the application. However, even without a prior adjudication of mental illness, if a sheriff determines that an applicant "suffer[s] from a physical or mental infirmity that prevents the safe handling of a handgun" under
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3), the sheriff may deny the application.
 

 III. The Due Process Clause
 

 The Fourteenth Amendment to the United States Constitution provides that "No State shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. 14, § 1. An
 
 *55
 
 important check on the power of the government, the principle of procedural due process requires that the states afford the individual a certain level of procedural protection before a governmental decision may be validly enforced against the individual. Procedural due process safeguards may be invoked when a state seeks to apply its laws in a manner in which individuals are "exceptionally affected, in each case upon individual grounds[.]"
 
 Bi-Metallic Invest. Co. v. State Bd. of Equalization
 
 ,
 
 239 U.S. 441
 
 , 446,
 
 36 S.Ct. 141
 
 , 142,
 
 60 L.Ed. 372
 
 , 375 (1915) (discussing
 
 Londoner v. Denver
 
 ,
 
 210 U.S. 373
 
 , 385,
 
 28 S.Ct. 708
 
 , 713-14,
 
 52 L.Ed. 1103
 
 , 1112 (1908) ).
 

 "The touchstone of [procedural] due process is protection of the individual against arbitrary action of government."
 
 Wolff v. McDonnell
 
 ,
 
 418 U.S. 539
 
 , 558,
 
 94 S.Ct. 2963
 
 , 2976,
 
 41 L.Ed.2d 935
 
 , 952 (1974) (citation omitted). In order to guard against the threat of any such arbitrary government action, "the right to some kind of prior hearing is paramount."
 
 Bd. of Regents v. Roth
 
 ,
 
 408 U.S. 564
 
 , 569-70,
 
 92 S.Ct. 2701
 
 , 2705,
 
 33 L.Ed.2d 548
 
 , 556 (1972). The United States Supreme Court has consistently held that "[t]he right to be heard before being condemned to suffer grievous loss of any kind ... is a principle basic to our society."
 
 Mathews v. Eldridge
 
 ,
 
 424 U.S. 319
 
 , 333,
 
 96 S.Ct. 893
 
 , 902,
 
 47 L.Ed.2d 18
 
 , 32 (1976) (citation and quotation marks omitted). However, whether a state will owe procedural due process protections to an individual depends upon the nature of the individual right that is at stake. "The requirements of procedural due process apply only to the deprivation of ... liberty and property" interests.
 
 Roth
 
 ,
 
 408 U.S. at 569
 
 ,
 
 92 S.Ct. at 2705
 
 ,
 
 33 L.Ed.2d at 556
 
 .
 

 Accordingly, in order for Petitioner to prevail in his argument that he was entitled to a hearing on appeal from the denial of his renewal application, it must first be determined that he had a property or liberty interest in retaining his Concealed Handgun Permit that was deserving of due process protection.
 

 IV. Whether Process was Owed
 

 Petitioner maintains in the instant case that he was entitled to due process protection in the form of a hearing because he "had both a liberty and property interest at issue at the time of the Denial." The Sheriff's Office maintains that "[t]he District Court's Order affirming the Sheriff's denial of the [Petitioner's] Application for a Concealed [Handgun] Permit does not violate any constitutional right to bear arms...." We first address Petitioner's contention that he had a vested property interest in his Concealed Handgun Permit at the time of the denial of his application.
 

 *56
 
 "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."
 
 Roth
 
 ,
 
 408 U.S. at 571-72
 
 ,
 
 92 S.Ct. at 2706
 
 ,
 
 33 L.Ed.2d at 557
 
 . In this sense, a property interest "may take many forms."
 

 Id.
 

 at 576
 
 ,
 
 92 S.Ct. at 2708
 
 ,
 
 33 L.Ed.2d at 560
 
 . Nevertheless, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."
 

 Id.
 

 "To have a property
 
 *6
 
 interest in a benefit, a person clearly must have more than an abstract need or desire for it.... He must, instead, have a legitimate claim of entitlement to it."
 

 Id.
 

 at 577
 
 ,
 
 92 S.Ct. at 2709
 
 ,
 
 33 L.Ed.2d at 561
 
 .
 

 A legitimate claim of entitlement is often created by statute.
 
 E.g.,
 
 id.
 

 ("Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]");
 
 Wolff
 
 ,
 
 418 U.S. at 557
 
 ,
 
 94 S.Ct. at 2975
 
 ,
 
 41 L.Ed.2d at
 
 951 ;
 
 Peace v. Employment Sec. Comm'n
 
 ,
 
 349 N.C. 315
 
 , 321,
 
 507 S.E.2d 272
 
 , 277 (1998) (citation omitted) ("State law determines whether an individual ... does or does not possess a constitutionally protected 'property' interest in continued employment."). For example, in
 
 Goldberg v. Kelly
 
 ,
 
 397 U.S. 254
 
 ,
 
 90 S.Ct. 1011
 
 ,
 
 25 L.Ed.2d 287
 
 (1970), the United States Supreme Court "held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process."
 
 Roth
 
 ,
 
 408 U.S. at 576
 
 ,
 
 92 S.Ct. at 2708
 
 ,
 
 33 L.Ed.2d at 560
 
 (discussing
 
 Goldberg
 
 ). A valid property interest existed in
 
 Goldberg
 
 because the welfare payments were "grounded in the statute defining eligibility[.]"
 

 Id.
 

 at 577
 
 ,
 
 92 S.Ct. at 2709
 
 ,
 
 33 L.Ed.2d at 561
 
 . While "[t]he recipients had not yet shown that they were, in fact, within the statutory terms of eligibility[,]" the Supreme Court "held that they had a right to a hearing at which they might attempt to do so."
 

 Id.
 

 In contrast, in
 
 Bd. of Regents v. Roth
 
 , the respondent had a " 'property' interest in employment at Wisconsin State University-Oshkosh [that] was created and defined by the terms of his appointment."
 

 Id.
 

 at 578
 
 ,
 
 92 S.Ct. at 2709
 
 ,
 
 33 L.Ed.2d at 561
 
 . However, those terms "specifically provided that the respondent's employment was to terminate" after the one-year contract term, and "they made no provision for renewal whatsoever."
 
 Id
 
 . Under those circumstances, "the respondent surely had an abstract concern in being rehired, but he did not have a
 
 property
 
 interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment."
 

 Id.
 

 The decision to rehire the respondent was left solely to the discretion of the University.
 

 The statutory regime in the present case is analogous to that in
 
 Goldberg
 
 . Petitioner's initial permit was valid only for a period of five
 
 *57
 
 years, and there is no question but that, pursuant to the provisions of the statute, he maintained a property interest in that permit during those years. Moreover, Petitioner maintained a property interest in the renewal of his Concealed Handgun Permit upon expiration of his prior permits. The relevant statute provides that "[t]he sheriff
 
 shall
 
 issue a permit to carry a concealed handgun to a person who qualifies for a permit under G.S. 14-415.12."
 
 N.C. Gen. Stat. § 14-415.11
 
 (b) (2017) (emphasis added). Because the statute does not give the local sheriff unfettered, unassailable discretion in the issuance of permit renewals, an applicant enjoys a legitimate claim of entitlement to renewal so long as the enumerated criteria have been satisfied.
 
 E.g.
 
 ,
 
 Mallette v. Arlington County Emples. Supplemental Retirement Sys. II
 
 ,
 
 91 F.3d 630
 
 , 635 (4th Cir. 1996). Thus, Petitioner had a clear property interest in the renewal of his Concealed Handgun Permit, and was entitled to procedural due process protections.
 

 In that Petitioner had a recognized property interest in the renewal of his Concealed Handgun Permit, we need not determine whether he also had a liberty interest in its renewal.
 

 V. What Process was Due
 

 Having established that Petitioner had a property interest in the issuance of his Concealed Handgun Permit sufficient to trigger procedural due process protection, we must determine whether Petitioner was deprived of such protection by the manner in which his renewal application was denied.
 

 The statute at issue provides that a sheriff may deny an application for a Concealed Handgun Permit pursuant
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3) without first holding a hearing on the matter.
 
 See
 

 *7
 

 Kelly v. Riley
 
 ,
 
 223 N.C. App. 261
 
 , 265,
 
 733 S.E.2d 194
 
 , 197 (2012) ("
 
 N.C. Gen. Stat. § 14-415.16
 
 ... specifically governs renewal of a concealed handgun permit[,] [and] does not require a hearing prior to the nonrenewal of an applicant's concealed handgun permit.") (quotation marks and alterations omitted). The statute instead affords the following scope of procedural protections:
 

 A person's application for a permit shall be denied only if the applicant fails to qualify under the criteria listed in this Article. If the sheriff denies the application for a permit, the sheriff shall, within 45 days, notify the applicant in writing, stating the grounds for the denial. An applicant may appeal the denial, revocation, or nonrenewal of a permit by petitioning a district court judge of the district
 
 *58
 
 in which the application was filed. The determination by the court, on appeal, shall be upon the facts, the law, and the reasonableness of the sheriff's refusal. The determination by the court shall be final.
 

 N.C. Gen. Stat. § 14-415.15
 
 (c) (2017). Accordingly, following a sheriff's denial of a Concealed Handgun Permit application, the process afforded is the applicant's opportunity to appeal that decision.
 

 The question remains, however, whether the opportunity to obtain appellate review is sufficient when that review is unaccompanied by an opportunity to be heard. We conclude that appellate review without an opportunity to be heard does not satisfy the demands of due process.
 

 It is manifest that "some kind of hearing is required at some time before a person is finally deprived of his property interests."
 
 Wolff
 
 ,
 
 418 U.S. at 557-58
 
 ,
 
 94 S.Ct. at 2975
 
 ,
 
 41 L.Ed.2d at
 
 952 (citing
 
 Joint Anti-Fascist Refugee Committee v. McGrath
 
 ,
 
 341 U.S. 123
 
 , 168,
 
 71 S.Ct. 624
 
 , 646-47,
 
 95 L.Ed. 817
 
 , 852 (1951) ).
 

 Man being what he is cannot safely be trusted with complete immunity from outward responsibility in depriving others of their rights.... That a conclusion satisfies one's private conscience does not attest its reliability. The validity ... of a conclusion largely depend[s] on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done.
 

 Joint Anti-Fascist Refugee Committee
 
 ,
 
 341 U.S. at 171-72
 
 ,
 
 71 S.Ct. at 648-49
 
 ,
 
 95 L.Ed. at 854
 
 . Nevertheless, "[t]hat a hearing has been thought indispensable in so many other situations, leaving the cases of denial exceptional, does not itself prove that it must be found essential [everywhere]."
 
 Joint Anti-Fascist Refugee Committee
 
 ,
 
 341 U.S. at 172
 
 ,
 
 71 S.Ct. at 649
 
 ,
 
 95 L.Ed. at 854
 
 . It does, however, create a "burden of showing weighty reason for departing in [an] instance from a rule so deeply imbedded in history and in the demands of justice."
 

 Id.
 

 In the case at bar, nothing has been presented to this Court that would justify the departure from such a significant safeguard of the rights of the individual. There has been no indication "that it will be
 
 *59
 
 impractical or prejudicial to a concrete public interest to disclose" to an applicant the nature and basis of the denial of the applicant's renewal application and, when on the grounds that the applicant "suffer[s] from a ... mental infirmity," "to permit [the applicant] to meet [the allegations] if [the applicant] can."
 
 Joint Anti-Fascist Refugee Committee
 
 ,
 
 341 U.S. at 172-73
 
 ,
 
 71 S.Ct. at 649
 
 ,
 
 95 L.Ed. at 854
 
 . Instead, our attention has been directed to
 
 Kelly v. Riley
 
 ,
 
 223 N.C. App. 261
 
 ,
 
 733 S.E.2d 194
 
 (2012), in support of the argument of the Sheriff's Office that the "denial of [Petitioner's] Application for a Concealed [Handgun] Permit does not violate any constitutional right to bear arms[.]" However,
 
 Kelly
 
 is inapplicable to the case at bar.
 

 In
 
 Kelly
 
 , the sheriff's office denied the petitioner's application for a Concealed Handgun Permit under the mandatory disqualification provision of
 
 N.C. Gen. Stat. § 14-415.12
 
 (b)(8) because the petitioner had a "previous conviction for assault on a female[.]"
 
 Kelly
 
 ,
 
 223 N.C. App. at 262
 
 ,
 
 733 S.E.2d at 195
 
 . It is important to note that
 
 Kelly
 
 involved issues of substantive due process
 
 *8
 
 rather than procedural due process. Moreover, in
 
 Kelly
 
 the
 
 petitioner was afforded a hearing on appeal
 
 from the denial of his Concealed Handgun Permit. The petitioner had also been protected by the various adjudication procedures that led to his initial conviction.
 

 In the instant case, Petitioner was not afforded the benefit of an adjudicatory proceeding prior to the district court's affirmance of the Sheriff's Office's denial of his Concealed Handgun Permit renewal on the grounds that Petitioner "suffers from a mental health disorder that affects his ability to safely handle a firearm." Rather, the procedures employed consisted of (1) a vague, bare bones written notice advising Petitioner that his application had been denied, and (2) an opportunity to appeal that denial. The written notice stated that Petitioner had been denied pursuant to " NCGS 14-415.12(a) -Does not meet the requirements for application." The notice did not specify which subsection of
 
 N.C. Gen. Stat. § 14-415.12
 
 (a) Petitioner did not satisfy, nor did it provide him with an explanation of the factual basis for the denial. Finally, the notice informed Petitioner that "You may appeal the decision by submitting a written or typed petition (statement); or complete the appeal form and submit to the Senior Resident Superior Court Judge setting forth the reasons for appeal." In Petitioner's appeal to the district court, he noted that "[t]he information provided in the Denial is so minimal that there is no way for Petitioner to know what facts to challenge on appeal." Petitioner was not subsequently provided with any such information, and on appeal the district court merely "reviewed [Petitioner's] ... relevant information" before finding that Petitioner "suffers from a
 
 *60
 
 mental health disorder that affects his ability to safely handle a firearm." It is undisputed that Petitioner was first informed of the precise grounds for the denial of his renewal application in the district court's order. Petitioner was not afforded a hearing on appeal, nor was he given an opportunity to submit even minimal contradictory information, before the district court made its final determination.
 

 These procedures were wholly inadequate. The State's prohibition against the grant of a Concealed Handgun Permit to a person who "suffer[s] from a ... mental infirmity that prevents the safe handling of a handgun" necessarily requires an individualized inquiry as to whether the specific applicant does indeed suffer from a mental infirmity.
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3) (2017). The absence of any prior process requires that, if sought, process is due at that moment. This is particularly so in the instant case, as a determination under
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3) that an individual suffers "from a ... mental infirmity that prevents the safe handling of a handgun" is especially susceptible to the type of arbitrary governmental action that the due process clause was designed to prevent.
 

 We do not discount the safety concerns expressed by the Sheriff's Office. Nonetheless, "[t]he heart of the matter is that democracy implies respect for the elementary rights of men...."
 
 Joint Anti-Fascist Refugee Committee
 
 ,
 
 341 U.S. at 170
 
 ,
 
 71 S.Ct. at 647
 
 ,
 
 95 L.Ed. at 853
 
 . "[A] democratic government must therefore practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."
 
 Id
 
 . The State is not "immune from the historic requirements of fairness merely because [it] acts, however conscientiously, in the name of security" and safety.
 
 Id.
 
 at 173,
 
 71 S.Ct. at 650
 
 ,
 
 95 L.Ed. at 855
 
 .
 

 At the very least, it is evident that "some kind of hearing is required at some time before a person is finally deprived of his property interests."
 
 Wolff
 
 ,
 
 418 U.S. at 557-58
 
 ,
 
 94 S.Ct. at 2975
 
 ,
 
 41 L.Ed.2d at 952
 
 (citation omitted). We need not determine the full panoply of rights that Petitioner
 
 should
 
 have been afforded had there been a hearing in the present case. By definition, "a hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief; and, if need be, by proof, however informal."
 
 Londoner
 
 ,
 
 210 U.S. at 386
 
 ,
 
 28 S.Ct. at 714
 
 ,
 
 52 L.Ed. at 1112
 
 . Here, Petitioner was deprived of his procedural due process safeguards by the absence of any hearing whatsoever.
 

 *9
 

 VI. Conclusion
 

 Where a local sheriff determines that an application for renewal of a Concealed Handgun Permit ought to be denied on the grounds that
 
 *61
 
 the applicant "suffer[s] from a ... mental infirmity that prevents the safe handling of a handgun[,]" that applicant must be afforded an opportunity to dispute the allegations underlying the denial before it becomes final. The opportunity to appeal the denial to the district court as set forth in
 
 N.C. Gen. Stat. § 14-415.15
 
 (c) is procedurally sufficient only to the extent that it provides an opportunity for the applicant to be heard at that stage. At a minimum, an applicant denied the renewal of a permit pursuant to the provisions of this subsection must be provided notice of the precise grounds for the sheriff's denial, together with the information alleged in support thereof. This process must be followed by an opportunity to contest the matter in a hearing in district court. Because neither was afforded in the instant case, the district court's Order Denying Appeal For A Concealed Handgun Permit is reversed. The matter is reversed and remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and ARROWOOD concur.
 

 [1]
 

 While neither the Sheriff's Office nor the district court cited a specific statutory provision, the district court's language tracks that of
 
 N.C. Gen. Stat. § 14-415.12
 
 (a)(3), which provides for the denial of a Concealed Handgun Permit if the applicant "suffer[s] from a physical or mental infirmity that prevents the safe handling of a handgun."