## GEORGE K. JARVIS *v.* MAYOR AND COUNCIL OF BERLIN.

*Street Improvements—Assessments for Costs—Validity of Ordinance—Notice to Property Owners—Map as Evidence.*

The fact that municipal ordinances, providing for the widening and straightening of streets as well as for grading and paving them, assessed the abutting property owners for part of the costs of the whole work, although the municipality had no legislative authority to assess such owners for the costs of widening and straightening streets, did not invalidate the ordinances as a whole, or the provisions therein for the assessment of costs, so far as this applied to the costs of grading and paving.                    pp. 162-166

The fact that ordinances, providing for certain street improvements and the assessment of the costs on the abutting owners, contained no provision for notice, affected them only so far as the assessment of costs was concerned, and not as to the authorization of the work.                    p. 166

An ordinance of the town of Berlin which, in connection with proposed assessments to abutting owners of part of the costs of certain street improvements, provided for notice by newspaper publication and personal service on such owners, and

for a hearing of objections, sufficiently complied with the constitutional requirement as to due process of law, and it was immaterial that the preamble of the ordinance recited that the work had been done and that it had been determined by previous ordinances that certain proportions of the costs should be assessed against the abutting properties, such determination being obviously tentative only.                    pp. 166, 167

A map, which is not official, and not proved to be accurate or reliable, and was not made in pursuance of law or by direction of any official authority, is not admissible.      pp. 167, 168

An assessment on an abutting owner for the cost of street improvements is not invalid because part of the land included in the street as improved belongs to such owner and not to the municipality.                    pp. 168, 169

*Decided June 8th, 1927.*

Appeal from the Circuit Court for Worcester County (BAILEY and DUER, JJ.).

Action by the Mayor and Council of Berlin against George K. Jarvis. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Joshua W. Miles,* with whom were *Miles & Myers* on the brief, for the appellant.

*F. Leonard Wailes* and *John S. Whaley,* with whom were *Staton & Whaley* and *Wailes & Robins* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Under an agreement made June 24th, 1924, between the Mayor and Council of Berlin and the County Commissioners of Worcester County, approved by the State Roads Commission, it was arranged that the State Roads Commission

should take charge of and build for the town of Berlin certain streets in said town, and that when said roads were completed and ready for use there should be turned over to the Mayor and Council of Berlin, from the lateral roads funds available for use in Worcester County during the year 1925, a sufficient amount to compensate or reimburse said town for fifty per cent. of the funds which may have been expended on the building of said roads under the supervision of the State Roads Commission. Whereupon the following ordinance was passed on October 6th, 1924, and approved by the Mayor on October 9th, 1924:

"Ordinance No. 31.

"An ordinance providing for the widening, straightening, grading, improving and paving of Bay Street from Main Street to the corporate limits of Berlin at the west end of the state road from Trappe, and Broad Street from Main Street to the corporate limits of Berlin at the east end of the old county road from Libertytown and Powellville.

"Whereas, the County Commissioners of Worcester County and the Mayor and Council of Berlin did on the twenty-fourth day of June, nineteen hundred and twenty-four, enter into an agreement whereby the said County Commissioners of Worcester County recommended to the State Roads Commission of the State of Maryland that the State Roads Commission take charge of and build for said town of Berlin the roads referred to in the title of this ordinance, and that when the said roads shall have been completed and ready for use there be appropriated to the said Mayor and Council of Berlin sufficient funds from the lateral road funds to be available for use in Worcester County, during the year nineteen hundred and twenty-five, as will compensate or reimburse the Mayor and Council of Berlin for fifty per cent. of the funds which may have been expended in the building of said roads in the town of Berlin under the supervision of the State Roads Commission aforesaid. Whereas said agreement has been approved by the said State Roads Com-

mission and the suggestion therein as to the building thereof under the direction and supervision of the said State Roads Commission accepted.

"Section 1. Be it enacted and ordained by the Mayor and Council of Berlin, That, pursuant to the authority conferred upon it by its charter and the agreement therein referred to, the road bed of Bay Street from Main Street to the corporate limits of Berlin at the west end of the state road from Trappe, and of Broad Street from Main Street to the corporate limits at the east end of the old county road from Libertytown and Powellville, be widened, straightened, graded, improved, and paved, with concrete according to the standard specifications of the Maryland State Roads Commission, said roadbed to be laid on said street in accordance with the blue prints hereto attached and made a part hereof, marked Exhibits Plats 1, 2, 3, 4, 5, and 6, and Grade Sheets 1 and 2.

"Section 2. And be it enacted and ordained as aforesaid that one-eighth of the cost of such work be assessed according to the front foot rule of apportionment upon the respective properties binding on the northerly side of said Bay Street and on the northerly side of said Broad Street, and one-eighth thereof also according to the front foot rule of apportionment upon the respective properties binding on the southerly side of said Bay Street and on the southerly side of said Broad Street.

"Section 3. Be it further enacted and ordained that the said work be done through the agency of the State Roads Commission of Maryland, acting for and on behalf of and with the approval of the Mayor and Council of Berlin, and in accordance with the plans and specifications heretofore mentioned, and at the least cost consistent with the proper quality of materials and workmanship.

"Section 4. Be it further enacted and ordained as aforesaid, That this ordinance shall take effect from the date of its passage."

Subsequently, on April 25th, 1925, Ordinance No. 36 was passed, and signed by the mayor. It is entitled:

"Ordinance No. 36.

"An ordinance amending Ordinance No. 31 by changing the route of the improved street therein described from the intersection of Bay Street and Pitts Street so as to make said improvement on Pitts Street to Williams Street to connect with that part of Pitts Street already improved from Williams Street to Main Street, instead of to run on Bay Street from Pitts Street to Main Street; and providing for the widening, straightening, grading, improving and paving of said Pitts Street from its intersection with William Street to its intersection with Bay Street."

It repeats the recital in Ordinance No. 31, and further recites that, by reason of certain difficulties in the way of improving Bay street from Main street to the intersection of Pitts street, the said commission recommended a change of the route of the improved street so as to run on Pitts street to Williams street to connect with that part of Pitts street already improved, and that said proposed change has been submitted to and approved by the County Commissioners, and then re-enacts Ordinance 31 as amended.

Subsequently, on September 2nd, 1925, Ordinance No. 38 was passed:

"Ordinance No. 38.

"Whereas, by virtue of the authority of the General Assembly of Maryland, and of ordinance heretofore passed, Pitts Street from Bay to Williams Street, Bay Street from Pitts Street to the west end of the state road leading from Trappe to Berlin, Broad Street from Main Street to the corporate limits at the east end of the old county road from Libertytown and Powellville, Baker Street from Main Street to Harrison Avenue, and West Street from Main Street to Broad Street, have been widened, straightened, graded, improved and paved.

"Whereas, it was duly determined and provided that certain proportions of the cost of such work be assessed by the front foot rule of apportionment upon the respective properties along the line of said improvements, binding on each side of said improved street, within the limits above mentioned.

"Now, therefore:

"Section 1. Be it enacted and ordained by the Mayor and Council of Berlin, That the Mayor and Council meet in special session at the council room in the town of Berlin, on the 16th day of September, 1925, at 7:30 o'clock P. M., for the purpose of hearing all persons interested in the proposed assessments and for the consideration of any objections thereto, and that general notice of the time, place and object of said meeting be given by publication in two successive issues of some weekly newspaper published in Worcester County, the first insertion to be at least one week before the meeting, warning all persons interested in the proposed assessments, to appear at the time and place aforesaid to be heard in the premises; and the secretary is hereby directed to cause a copy of the said notice to be served personally on such tax payers proposed to be assessed, as may be found within the corporate limits, and to mail such notice to such tax payers as are not found within the corporate limits, addressed to their last post office address, such personal service, or such mailing to be not less than five days before the date fixed for such meeting.

"Section 2. Be it further enacted and ordained, as aforesaid, That publication and service as aforesaid of a copy of this ordinance shall be deemed sufficient notice.

"Section 3. Be it further enacted and ordained, as aforesaid, That this ordinance shall take effect from the date of its passage."

Subsequently, on September 22nd, 1925, Ordinance No. 39 was passed. It recites that, in pursuance of Ordinance No. 31, as amended by Ordinance No. 36, the streets there-

in mentioned have been improved as therein provided; and
that by said Ordinance No. 31 as amended it was enacted
and ordained that one-eighth of the cost of the work be
assessed according to the front foot rule of apportionment
upon the respective properties binding on the northerly side
of said streets, and one-eighth thereof upon the respective
properties binding on the southerly side of said streets; re-
cites Ordinance No. 38, and that the notices required thereby
were duly given, and that the Mayor and Council met in
accordance with said notices and heard all persons who ap-
peared and desired to be heard in regard to the pro-
posed assessments and received all written communications
with regard thereto and gave full consideration to both oral
and written protests, and after such hearing and considera-
tion determined that the amounts properly assessable to the
owners of the abutting properties were as thereinafter set
forth.   It then enacts that one-eighth of the cost of said
improvements be assessed according to the front foot rule
against the respective properties binding on each side of
the several streets, and lists the several owners and the
amounts with which they are assessed; and enacts further
that said assessments shall bear interest from October 1st,
1925, providing that the assessments may be paid in install-
ments.

The amounts assessed against appellant on two lots were
together $315.86, and suit in assumpsit on the common
counts was brought against him to collect that sum, with
interest from October 1st, 1925.   The case was tried by
the court without a jury, and a verdict rendered in favor
of appellee for $315.86, and judgment entered on that ver-
dict.   This appeal is from that judgment.

The main contention of appellant is that all of the above
mentioned ordinances were void, in that they provided for
the widening and straightening of streets as well as for
grading and paving them, and assessed the abutting prop-
erty owners with a portion of the costs of such work by the
front foot rule of apportionment; whereas there was no

authority conferred upon the municipality by any act of the legislature to assess the abutting property owners for costs of widening and straightening streets.   This objection is presented in the first three bills of exception, which were to the refusal of the trial court to strike out as evidence the said ordinances, which were admitted subject to exception; and in the sixth, which was to the ruling of the court on the prayers.

The other objection seriously pressed was that Ordinances 31, 36, 38, and 39 were void, the first two because they made no provision for notice to abutting property owners and gave them no opportunity to be heard; and No. 38, because it was too late, and gave notice more than three months after the completion of the work, and then stated that the assessment had already been determined upon; and No. 39, which actually made the assessment, because of the alleged absence of authority to make the assessment.   This objection is also presented in the first, second, third, and sixth bills of exception.

Taking these objections in order:

There can be no question, and it is in fact admitted, that the municipality was authorized by chapter 799 of the Acts of 1912 to assess by ordinance to the abutting property owners "not exceeding one-half of the cost upon any property binding upon such street * * * that is to say, not to exceed one-fourth of said cost upon any property binding upon each or either side of such street * * *, according to the front foot rule of apportionment * * * or such other equitable basis as it may determine," and to provide "for the collection of said assessment as other city taxes are collected or in such manner as it may prescribe, either before or after the work shall have been done" for grading and paving or curbing of any street now condemned, ceded, dedicated, or opened as a public highway or "which may hereafter be condemned, ceded, dedicated, opened, widened, straightened or altered according to the laws and ordinance regulating same." And by section 43 of chapter 733 of the Acts of 1908 it is provided: The Mayor and Council of Berlin shall have full

power and authority for "laying out, opening, widening, extending, straightening out and closing up, in whole or in part, and for the grading, regrading, for shelling and reshelling, for paving and repaving, curbing and recurbing, and for repairing and keeping in proper condition and order for travel, traffic and other uses the streets, lanes, alleys and thoroughfares within the corporate limits of said town, wheresoever in their judgment the public welfare and convenience requires any such action on their part. For laying out, opening, widening, extending, straightening out and permanently closing up the streets, lanes, alleys or thoroughfares of the town or any of them, provision must be made by ordinance. * * * Whenever the Mayor and Council shall by ordinance order the opening of a new street or alley, or the widening or straightening of any existing street or alley, or the construction of any park, public square, sewer, wharf, market house, engine house, city hall, or for any other public improvement, provided they are authorized to make such public improvement, the Mayor shall by voters and freeholders of the town, not office holders, who, together with the Mayor and President of the Council shall constitute a commission to examine and report on the proposed improvement; and if the said commission or a majority of them shall certify to the Mayor and Council that any land, material or other property belonging to any person or corporation or the removal thereof, is necessary or convenient for the construction of the proposed improvement, then the Mayor and Council may condemn such property or may agree with the owner or owners thereof for the purchase, use, occupation or removal of the same, and if they cannot agree, or if the owner or owners, or any of them be an infant" or otherwise *non sui juris,* or absent, application may be made by the mayor to one of the judges, who shall issue a warrant to the sheriff to summon a jury to assess the damages and benefits, etc.

It will be seen that there is no provision, in either the Act of 1912 or the Act of 1908, for the assessment of costs for widening and straightening streets to the owners of abutting property. There is evidently some omission in the Act of

1908, as it appears in the official publication of the acts of that year, but apparently there was provision for a commission to advise the municipal authorities, when an ordinance was passed for the widening or straightening of a street, if any land was privately owned which it would be necessary to purchase or condemn, and for condemnation proceedings where that was necessary. But it also seems to have been contemplated that the widening and straightening of streets might not always involve the acquiring of private property, or that such property might be dedicated, and therefore no condemnation or purchase would be necessary. In which case the commission would be unnecessary. In *Beale v. Takoma Park*, 130 Md. 309, it was said that the Act of 1896, ch. 310, sec. 31, a similar condemnation act for Montgomery County, had no application where there had been a dedication.

It may be that, when Ordinances Nos. 31 and 36 were passed, it was known to the municipal authorities that there would be no extra costs for the widening and straightening of the streets involved. As a matter of fact there is evidence in the record that there were none. In this situation the canon of construction is invoked by appellant that "the test is to be found not by what has been done under the ordinance, but what may, by its authority, be done." *Johns Hopkins Bldg. Co. v. Baltimore*, 130 Md., at page 286.

At all events the ordinances would have been valid if there had been no provision in them for the assessment of costs, because the Act of 1908 authorized the passage of ordinances for the widening and straightening of streets and also for grading and paving. Assuming then that the provision for the assessment of costs was invalid so far as it applied to the costs of widening and straightening, did that invalidate the ordinances as a whole, or even the provision for the assessment of costs so far as it applied to the cost of grading and paving? We think not. It was open to the defendant to prove, if he could, that part of the costs with which he was charged were applicable to widening and straightening, and to relieve himself to that extent. And

perhaps the burden was on the plaintiff to prove what part of the costs were for grading and paving. And it did offer testimony that the widening and straightening added nothing to the costs. We think, therefore, that Ordinances Nos. 31 and 36 were properly admitted in evidence, and there was no error in the ruling involved in the first exception, unless these ordinances were invalid because they contained no provision for notice. That omission would affect them only so far as the assessment of costs is concerned, and not as to the authorization of the work. *Rossberg v. State,* 111 Md. 394; *Creaghan v. Baltimore,* 132 Md. at 448.

This brings us to the second objection seriously urged— absence of provision for notice. In *Ulman v. Baltimore,* 72 Md. 587, an assessment was held to be null and void because the ordinance made no provision for notice and a hearing. This case overruled the case of *Baltimore v. Scharf,* 56 Md. 50, and other previous cases, because of the decision in *Spencer v. Merchant,* 125 U. S. 345. But in the *Ulman* case, at page 611, it was expressly held that the authority given by the statute then under consideration to the city to deal with the subject matter was so full and complete that, although the statute did not provide for notice, an ordinance providing for proper notice and hearing would be sufficient. And in *Spencer v. Merchant, supra,* it was held that, if there is provision for notice and a hearing at some stage of the proceeding, it is not a taking of property without due process of law. This was quoted and italicized in the second *Ulman* case, 79 Md. 479, and in *Baltimore v. Stewart,* 92 Md. 535. The Act of 1912 gave as full authority to the Mayor and Council of Berlin to deal with the matter by ordinance as the act considered in the *Ulman* case gave the City of Baltimore. Indeed the Act of 1912 did more, for it expressly authorized the municipality to provide by ordinance for assessment by the front foot rule for costs of grading, paving, and curbing, which is not far different from the act which this Court had under consideration in *Bassett v. Ocean City,* 118 Md. 114. See also *Balti-*

*more v. Johns Hopkins Hospital,* 56 Md. 1; *Hyattsville v. Smith,* 105 Md. 318. We hold that the notice and hearing provided by Ordinance 38 was a compliance with the constitutional requirement, and that the assessment made by Ordinance 39 was valid as to costs incurred for grading, paving, and curbing. It is true that the preamble to Ordinance No. 38 stated that the work authorized by previous ordinances had been done, and that by said ordinances it was determined and provided that certain proportions of the cost of such work be assessed by the front foot rule; but, nevertheless, it was ordained by said ordinance that the Mayor and Council meet at an appointed time for the purpose of hearing all persons interested in the proposed assessments and for the consideration of any objections thereto, and that general notice be given of the time, place, and object of the meeting by publication in a newspaper, and that notice be served personally on the tax payers proposed to be assessed; and appellant admitted he got the notice, but failed to attend the meeting, because, he says, the ordinance stated the matter had already been determined, and he did not think there was any use to protest. But, at most, the "determination" could only have been tentative, and it was expressly stated in the ordinance that the purpose of the meeting was to give those interested an opportunity to object. And an assessment was not in fact made or authorized until after this meeting.

It follows that we find no error in the rulings involved in the first, second, third, and sixth exceptions. Defendant's only prayer was a demurrer to the evidence, and plaintiff's prayer seems unobjectionable if there was not to be a directed verdict. It was not criticized on any other ground.

There are two other exceptions in the record, which relate to the admission of a map of the town of Berlin "contained in an Atlas of Wicomico, Somerset, and Worcester Counties, Maryland, title page of which is in the following words and figures: 'Title Page of Atlas of Wicomico, Somerset, and Worcester Counties, Maryland.' " The map purports to

have been made in 1877 from actual surveys.　It is not official, and there was no proof that it was accurate or reliable.　It was not made in pursuance of law or by direction of any official authority.　It was not admissible.　*Tome Institute v. Davis,* 87 Md. 607.　The purpose of the offer was to prove the width of one of the streets, and witness testified that it showed the width of the street to be thirty feet.　We do not think the error was prejudicial in the view we have taken of the issues presented.

There is testimony in this case that, in widening the road in front of appellant's property, his sidewalk, and for part of the distance, ground inside his sidewalk, was taken.　It does not appear, however, that any part of the street paved extended beyond the fence line of appellant's property, nor that any part of the street within the fence line belonged to appellant.　But even if a strip of his land was included in the street, that would not be a defense in this action.　It is said in 28 *Cyc.* p. 1108, sec. b: "Where a street is to be opened and improved, an assessment will not be void because levied before title to the soil over which it runs has been acquired."　In *Village of Hyde Park v. Borden,* 94 Ill. 26, an abutting owner objected to an assessment because the sewer took part of his property.　A statute provided that, "after the passage of an ordinance for an improvement, the making of which will require that private property be taken, the city or village shall file a petition for the ascertainment of the compensation to be paid, if it cannot be agreed upon by the parties."　The court held that it was not necessary to acquire necessary private property before making the assessment.　In *Leman v. City of Lake View,* 131 Ill. 388, the court cites *Village of Hyde Park v. Borden, supra; Holmes v. Village of Hyde Park,* 121 Ill. 128; *Hunerberg v. Village of Hyde Park,* 130 Ill. 156.　The court said: "In the case last mentioned the questions were precisely identical with those presented here; the objection there being that a portion of the land included within the street proposed to be improved was the property of the objector, and the trial court having there, as here, excluded all the evidence as to title

offered by him. We there held that the corporate authorities of cities and villages may levy special assessments for the improvement of a proposed street, before acquiring title to the soil by condemnation or otherwise, and may afterwards take the necessary steps to condemn the land, and have the compensation and damages to be paid assessed, and that the owner of the property specially assessed for grading and paving such street cannot interpose the objection to the confirmation of such assessment, that the city or village had not acquired title to the soil to be graded and paved. * * * The question of title was not before this court, and was not a proper matter for consideration in the proceedings, and the evidence bearing upon that question was therefore wholly immaterial."

The Illinois Act referred to is similar in purpose and effect to section 43 of chapter 733 of Acts of 1908, hereinbefore referred to.

In *Lewis v. Albertson,* 23 Ind. App. 147, suit was to enforce lien of assessment on abutting property. It was there urged that plaintiff should be made to show what title, if any, the city had at the time of the adoption of the resolution for the improvement, and, if it had title, to state the width of the street so owned. The court held: "If there was a public street in the City of Bedford of the name designated in the resolution, its width and the title were not material in this action. *Dugger v. Hicks,* 11 Ind. App. 374. *Elliott, Roads & Streets,* p. 380, says: 'If the local authorities were attempting to construct a road or street over property on which they had neither acquired nor could lawfully acquire the right to lay out a street, the property owner might, if he moved in time and in an appropriate way, prevent the enforcement of the assessment against his property. But if he should delay until the work had been done, he could not succeed.' "

If appellant's land has been taken, he is not without redress in an appropriate proceeding.

*Judgment affirmed, with costs to appellee.*