## STATE ROADS COMMISSION OF MARYLAND
### *v.* NEWMAN, ET UX.

[No. 417, September Term, 1967.]

*Decided December 4, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*John J. Schuchman, Special Attorney,* and *Walter W. Claggett, Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellant.

*Doris P. Scott* and *William B. Evans* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

A Cecil County jury awarded appellees (Newman) $33,-007.28 for 745.87 square feet of land taken by appellant (Com-

mission) for the construction of the "Elkton by-pass." Denouncing the verdict as "grossly excessive" the Commission adjures us to set it aside and remand the case, to the end, perchance, that the result of a second sortie will be less infelicitous. We are unmoved.

While there seems to be no dispute about the relevant facts they will be difficult to grasp without an occasional glance at the attached sketch. (*Infra* p. 574)

In the construction of its project, "Md. Rte. 279 (Extended) from Md. Rte. 316 to U. S. Rte. 40," the Commission proposed to widen existing Newark Avenue, east of Singerly Road and use all of Newark Avenue west of Singerly Road. Newman's property is the lot (100 x 200) at the corner of Singerly Road and Newark Avenue. It is improved by a one story brick building used as a drugstore.

For some time prior to 1962 Eugene Salinger was the owner of a 15 acre tract on the west side of Singerly Road (Maryland Route 280) just beyond the northern boundary of the town of Elkton. In January 1962 a local engineering firm prepared for Salinger a plat showing the subdivision of the tract into residential building lots. Salinger christened it "Crestwood." Our sketch, in the main, is a part of the Crestwood plat, which was admitted into evidence over the Commission's objection.

Newman acquired his lot (100' x 200') on 26 March 1962 from the owners (Lanzi) of the "Medical Park" (475' x 300'), who had acquired that tract from Salinger a week earlier (20 March 1962). Salinger conveyed lots 32 and 33 to Clinton Jaquette in July 1962. The record is devoid of any direct information concerning those three conveyances. On 16 February 1965, Salinger conveyed to the Benfield Company all of the land, about 8.5 acres, lying to the north of the south side of Newark Avenue, excepting, of course, lots 32 and 33, earlier conveyed to Jaquette. On the same day Jaquette conveyed lots 32 and 33 to the Benfield Company. Except as hereinafter noted, there is no information in the record about those two conveyances. Salinger retained lots 14 and 15.

On 19 September 1966 the Commission paid into court $625 alleging that to be the "fair value" of the land taken and the consequential damage done to the property. On the same day

the Commission took possession thereof. At that time Newark Avenue west of Singerly Road had not been opened and the area was heavily wooded. Although branded by the Commission as a "paper" street on an unrecorded plat, it appears to be conceded that the Master Development Plan for the Town of Elkton, begun in 1958 by Stein and Marcou Associates, City Planners, Washington, D. C., and finished in 1963, indicates the extension of Newark Avenue westward from Singerly Road as a part of the "Elkton by-pass." There is little doubt that the plat of Crestwood was made to conform with the Master Development Plan. Moreover it (the Crestwood plat) was shown to Newman before he bought his lot and, he said, he wanted it because it was a corner property.

At trial, after showing that it proposed to acquire the area A B C in fee and to deny all access along the line B C D (the Newark Avenue frontage) and the line A B on Singerly Road, the Commission produced William E. Shaw, an expert witness, who testified that the total damage sustained by Newman was $550. During his cross-examination there was read into the evidence the description in the 1965 deed from Jaquette to the Benfield Company which is as follows:

> "Beginning for the same and at a point on the westerly side of Singerly Road said point being 40 feet from and at right angles to the center line of Singerly Road at the northerly end of a 25-foot radius junction curve joining the westerly side of Singerly Road *with the northerly side of Newark Avenue* (60 feet wide), said point of beginning also being located north 1 degree and 9 minutes west 82.26 feet from a concrete monument set in the ground at the northeast corner of land recently conveyed by Eugene Salinger, et ux, to Joseph G. Lanzi, et ux, et al, by deed recorded among the Land Records of Cecil County in Liber W.A.S. 117, folio 460, and running thence said place of beginning an arc distance of 35.66 feet along a curve to the right whose radius is 25 feet; *thence by the northerly side of Newark Avenue* south 80 degrees 34 minutes and 30 seconds west 96 feet to a point; thence an arc distance of 42.88 feet along a curve to

the right whose radius is 25 feet to a point on the easterly side of Bryon Lane (50 feet wide); thence by the same north 1 degree and 9 minutes west 213.92 feet to a point; thence by Lot No. 31, north 88 degrees 51 minutes east 145 feet to a point of westerly side of Singerly Road; and thence by and with the westerly side of Singerly Road south 1 degree east 200 feet to the first mentioned point or the place of beginning. Be the contents thereof what they may. *Being all the Lots Nos. 32 and 33 as laid out and designated on a plat* of the subdivision known as Crestwood." (Emphasis added.)

The Commission thereupon rested its case.

Newman produced some engineering testimony, no longer significant, and three real estate experts whose estimates of the damage sustained by him ranged from $55,000 to $67,000. During the examination in chief of William F. Burkley, Newman's first real estate witness, there was read into the evidence an excerpt from the 1965 deed from Salinger to the Benfield Company, which is as follows:

"Subject to the use in common with others entitled thereto after a proposed road 50 feet wide lying north of and adjacent to the north 80 degrees 34 minutes 30 seconds east 475 feet and north 80 degrees 34 minutes 30 seconds east 167.01 feet lines hereinabove described; said 50 foot wide road running in a westerly direction from Maryland Route 280 to the westernmost line of the property hereinabove described."

At the conclusion of the evidence the Commission asked the trial judge, Rollins, J., to instruct the jury "that there is no compensation due the defendants [Newman] because newly constructed Newark Avenue will have a denial of access imposed upon it as said Newark Avenue abuts defendants' property." Judge Rollins declined to so instruct the jury.

The Commission charges Judge Rollins with two errors. The first, it says, is the admission of the Crestwood plat; the second is his refusal to incorporate the above mentioned instruction in his charge to the jury.

## I.

In support of its claim that the plat is inadmissible the Commission relies exclusively on *Jarvis v. Mayor and Council of Berlin,* 153 Md. 156, 138 A. 7 (1927). There the trial judges admitted a "map of the town of Berlin contained in an Atlas of Wicomico, Somerset, and Worcester Counties, Maryland," purported to have been made in 1877 from actual surveys. The purpose of the offer of the plat was to prove the width of a street. The Court said it was "not official," that there was no proof that it was accurate or reliable, that it was not made in pursuance of law nor by the direction of any official authority. Although the Court said "it was not admissible" it did "not think the error was prejudicial."

The case at bar presents a quite different situation in respect of the plat of Crestwood. It is obviously the product of thoroughgoing professional engineers. Shown thereon are Singerly Road (also known as Bridge Street), Elkton Boulevard, Decker Street, Wesley Street, Brown Street and Newark Avenue (East), all existing public streets or roads. Shown also are the approximate locations of water and sewer pipes in most of those streets. The boundary line between the town of Elkton and Cecil County is located thereon as are a number of concrete monuments and contour lines with 10 feet intervals. The notes state that United States Coast and Geodetic Survey datum was used in its preparation. The plat is dated 26 January 1962; the first revision is dated 6 February 1962; the third revision is dated 10 April 1962. (The April revision no doubt reflected the "Medical Park" conveyance.) The map in *Jarvis* was at least 50 years old. The Crestwood plat was identified by Harold Dute, an engineer in the employ of Edward H. Richardson Associates, Consulting Engineers, as a direct print from the original tracing on file in the Richardson office. Mr. Dute testified further that he directly supervised the field work, the computations and the drafting of the plat. That it is unrecorded and that it bears the title "Preliminary Plan," as charged by the Commission, .may present problems in other contexts but it is difficult to see how, in these circumstances, its admissibility is affected thereby. We do not think Judge Rollins' ruling thereon is reversible error. *State Roads Comm'n v. Hance,* 242 Md. 137, 218 A. 2d 33 (1966).

## II.

The gist of the Commission's second contention is that Newman, having no access to Newark Avenue, will sustain no damage by the denial of access along his northern boundary. Judge Rollins concluded Newman did have access to Newark Avenue.

There is certainly no doubt that Newman's northern boundary coincides with the south side of Newark Avenue, as shown on the plat of Crestwood, and that it was so intended. Salinger recognized and confirmed this when, in his deed to the Benfield Company, he reserved the right to use, *"in common with others entitled thereto* after [sic] a proposed road 50 feet wide" from Singerly Road to his western boundary (Lot 14). (Emphasis added.) Moreover, he described the "proposed road 50 feet wide" as "lying north of and *adjacent to"* the N 80° 34' 30" east 475 foot line, the easterly 210 feet of which happens also to be Newman's northern boundary. (Emphasis added.)

We are satisfied that the description in the deed from Jaquette to the Benfield Company (set forth above) is a verbatim repetition of the description in the deed from Salinger to Jaquette. It will be noted that the Jaquette-Benfield deed (16 February 1965) refers to the "concrete monument ["B" on the sketch] set in the ground at the northeast corner of the land *recently conveyed"* by Salinger to Lanzi. (Emphasis added.) The conveyance by Salinger to Lanzi was accomplished on 20 March 1962 and obviously would have been designated a *recent conveyance* in the deed from Salinger to Jaquette but not in the 1965 deed from Jaquette to the Benfield Company. The inadvertence of the draughtsman of the Jaquette-Benfield deed, if not commendable, is at least understandable. If the descriptions in the 1962 and 1965 Jaquette deeds are the same, and we think they are, then the language used therein assumes some significance. The existence of Newark Avenue is recognized by the reference to its "northerly side," its width "(60 feet wide)," and its function as the southern boundary of Lot 33. The existence of Byron Lane is similarly acknowledged. Finally, and most importantly, there is the statement that the land conveyed is "all [of] the Lots 32 and 33 as laid out and designated on a plat of the subdivision known as Crestwood." The "concrete

monument" at the northeast corner of the Salinger-Lanzi conveyance is also at the northeast corner of the Lanzi-Newman conveyance and there can be no doubt that it is set in the south side of Newark Avenue. It is clear that Salinger in the very deed (to Jaquette) in which he recognizes and refers to the plat of Crestwood and conveys two lots (32 and 33) designated thereon, also recognizes and refers to the "concrete monument" in the deed to Lanzi, irrevocably fixing its location in relation to the plat, i.e., on the south side of Newark Avenue. It scarcely needs to be pointed out that Lanzi's tract is accurately located on the plat and that it abuts Newark Avenue.

The Commission seems to attach great importance to its claim that Newman's deed does not refer to the plat of Crestwood, that the "calls are not in accordance with the plat," and that there is nothing in the deed to suggest that the property abuts on "a right of way, or any other type of road." The flaw in this argument, assuming it has any validity at all, is that there is nothing in this record which sheds any light on the contents of Newman's deed. But what may be more to the point, the record tells us nothing of the contents of the deed from Salinger to Lanzi. It well may be that Newman's rights in respect of Newark Avenue may have been acquired from Lanzi rather than Salinger. *See, e.g., Stevens v. Powell,* 152 Md. 604, 137 A. 312 (1927); *Douglass v. Riggin,* 123 Md. 18, 90 A. 1000 (1914); *Burns v. Gallagher,* 62 Md. 462 (1884); 2 Thompson, *Real Property* § 359 (1961) and cases cited therein. But we cannot say that Lanzi *did not acquire* from Salinger a right of access to Newark Avenue. Indeed, the probability that he did so is very strong. The plat had been in existence for some months and it is most unlikely it was not before Lanzi and Salinger during their negotiations and that the main inducement to the purchase of the land was its frontage on two streets. It is entirely clear from the plat that the termini of the northern boundary of the Lanzi tract are concrete monuments shown thereon and that the line is also the south side of Newark Avenue. It may be that, in the deed, the line was not referred to as being the south side of Newark Avenue but there seems to be no reason why this should make any difference when, in fact, it is the south side of Newark Avenue and an existing plat pre-

cludes any doubt about it. However, the fact most strongly supporting Lanzi's (and Newman's) right of access is, as earlier noted, Salinger's recognition and acknowledgment of its existence in providing for its perpetuation, in the Salinger-Benfield deed, by reserving for himself "in common with others entitled thereto" the use of the 50 foot road from "Maryland 280 to the westernmost line" of his property. Lanzi and Newman were the only persons, at that time, to whom the word "others" could possibly have applied.

We are unwilling to say that Judge Rollins was wrong in refusing to grant the requested instruction and holding, in effect, that Newman had access to Newark Avenue, a right which he could have enforced against both Lanzi and Salinger and of which he cannot be deprived without compensation. *Small v. State Roads Comm'n,* 246 Md. 646, 229 A. 2d 408 (1967) ; *Arkansas Louisiana Gas Co. v. Louisiana Dep't of Hgwys,* 104 So. 2d 204, 207 (La. 1958).

## III.

Newman moved to dismiss the appeal on the ground that the Commission's appendix does not comply with the requirements of Maryland Rule 828 a b c and g. In view of our decision on the merits we shall not act on the motion. Nevertheless, we think the Commission's dereliction in this regard would have been ample justification for the granting of the motion.

*Judgment affirmed.*
*Costs to be paid by appellant.*

574

14

15

300'

MEDICAL PARK

475'

200'

1¾ STY BRICK
CITY PHARMACY

100'

N80° 34' 30"E    AVENUE

NEWARK    MD. RTE. 279

PEAK LANE

BYRON LANE

33

32

SINGERLY ROAD
MD. RTE. 280

EXISTING NEWARK AVE.

N