## MURPHY ET UX. *v.* MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 64, September Term, 1972.]

*Decided December 5, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Walter J. Murphy, Jr.,* in proper person.

*H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,*

and *Alfred H. Carter, Deputy County Attorney,* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appellants, Walter J. Murphy, Jr. and Joan W. Murphy, his wife, owners of the property, 6012 Tilden Lane, Rockville, Montgomery County, in the Luxmanor Subdivision, challenge the validity of a special benefit front-foot assessment levied against their property by the appellee, Montgomery County, assessing a portion of the cost of the reconstruction of Tilden Lane. Their principal contention is that they have been denied due process of law. We have concluded that the order of the Circuit Court for Montgomery County, dated March 20 and filed on April 6, 1972 (Moorman, J.), dismissing the appeal of the appellants and affirming the action of the Montgomery County Council in its adoption of Ordinance No. 6-228, was properly passed and the order will be affirmed by us.

The County Council, on May 4, 1965, adopted Resolution No. 5-1828 in accordance with Section 24-31 of the Montgomery County Code (1960) [which was identical to the present Section 24-32 of the Montgomery County Code (1965)]. It provided:

> "Before enacting any ordinance for assessment of road construction benefits, the council shall propose the particular construction by adopting a resolution which shall specify the location, extent and kind of construction proposed, the type of materials to be used, the estimated cost, and a description of the real property that there is reason to believe will be specially benefited thereby.
>
> "Such resolution shall provide for a public hearing on the proposal and shall state the time and place where such hearing will be held."

Resolution No. 5-1828 set the date of June 15, 1965, for

a public hearing to consider a proposal to improve Tilden Lane from Old Georgetown Road to Old Stage Road by constructing a bituminous roadway to a paved width of 36 feet, together with concrete curbs, gutters, sidewalks and sod, necessary storm drainage facilities and, where requested by the property owners, driveway and walkway entrances. The Resolution fixed the time and place of the public hearing and outlined the public hearing procedure and the order of appearance, indicating that, at the conclusion of the hearing of both the proponents and opponents, the President of the County Council would announce the amount of time the record would remain open to submit written statements explaining their respective views.

The Resolution also set out in detail the estimated cost of construction of the proposed work and the proposed distribution of that estimated cost. Six separate items of estimated costs were stated in detail, with a resulting total estimate (excluding right-of-way) of $335,500.00. The item of proposed cost applicable to the subject property resulted in an estimated front-foot assessment of $10.00 per front foot. It was then stated:

> "5. That the properties which there is reason to believe will be specially benefited by the proposed improvements and which will be liable for assessment are as follows:

| "ESTIMATED ASSESSMENT INCLUDING ENTRANCES | LOT | BLK. | ASSESSABLE FEET | ACCOUNT NO. | NAME AND ADDRESS |
|---|---|---|---|---|---|
| | | | * * * | | |
| | | (Here follow 51 separate listings of lots) | | | |
| 1100.00 | 16 | A | 110.00 | 76110 | James W. & C. Osberg 6012 Tilden Lane Bethesda, Maryland" |

The appellants Murphy took title to the subject property, 6012 Tilden Lane, in June 1967 from James W. Osberg and wife, the property owners listed in Resolution No. 5-1828.

The public hearing provided for in Resolution No. 5-1828 was held on June 15, 1965, at the time and place mentioned in the Resolution. Richard J. Lynch, then Deputy Director (now Acting Director) of the Department of Public Works of Montgomery County, explained the project in some detail. He stated that the County Council had held a public hearing on July 16, 1963, in regard to improving the portion of Tilden Lane from Cushman Road to Old Stage Road. As a result of questions raised at that hearing in regard to the adequacy of Tilden Lane to carry additional traffic, the Council included funds in the 1964-1965 capital project for the reconstruction of Tilden Lane from Old Georgetown Road to Cushman Road, treating both projects as one project. He further stated that the project was initiated to provide (1) improved vehicular and pedestrian access as requested by residents, (2) access to schools and (3) sidewalks for students going to and from school. Tilden Lane, he said, was classified as a primary residential street on the Cabin John Master Plan adopted June 5, 1957; and that the proposed construction was in accordance with that Master Plan. Tilden Lane has been maintained by the County and is 12 to 14 feet wide and in some places even more narrow. Farther west it was a dirt road.

Mr. Lynch further testified that the formula in the County Road Code is that when a County-maintained road is reconstructed, the abutting properties will be assessed for no more than the cost of a secondary residential street 26 feet wide—the narrowest street constructed in a subdivision. The County would pay approximately two-thirds of the total construction cost of the project.

The developer of the Tilden Lane subdivision presented testimony of an engineer and land planner to the effect that Tilden Lane was a substandard road that needed improvement to accommodate traffic. Representatives of the Luxmanor Citizens Association and representatives of various residents on Parkedge Drive and Tilden Lane indicated that, although Tilden Lane needed improve-

ment, they favored a 24-foot road and a footbridge and some wanted cycle and walking paths as well. James W. Osberg and his wife, the predecessors in title of the Murphys, although they received notice of the hearing of June 15, 1965, did not appear and testify either in person or through counsel.

The County Council, on September 14, 1965, adopted Resolution No. 5-2127 which authorized the improvement of Tilden Lane from Old Georgetown Road through the intersection of Parkedge Drive with a pedestrian footbridge over the stream between Parkedge Drive and Old Stage Road. The validity of this Resolution was challenged by A. Burks Summers, William H. Pattison and other residents in the area in a suit in the Circuit Court for Montgomery County (Equity No. 30679) for a declaration of nullity and for an injunction. On April 5, 1966, after a hearing on the merits, the circuit court (Joseph Mathias, J.) dismissed the bill of complaint, stating *inter alia,* in the court's opinion that:

> "Plaintiffs' issues 3 and 4 allege the action of the Council was arbitrary, capricious and unreasonable and was in violation of the constitutional rights of abutting property owners. The Court cannot reach such a conclusion. It appears that the Council complied with the provisions of the County Code and the evidence that was adduced at the hearing was at least fairly debatable.
>
> "The determination of the necessity of a public improvement calls for the exercise of discretion by the County Council. The Court will not interfere with the exercise of that discretion except in cases which amount to fraud, bad faith or question of property rights. Kennedy Chamberlin Co. v. Snure, 212 Md. 369; Mayor and City Council of Baltimore v. Williams, 129 Md. 290."

Mr. and Mrs. Osberg, then owners of the subject prop-

erty, by a letter to the County Council, dated July 27, 1966, requested the County Council to relocate the sidewalk so that it would be next to the curb and shortly thereafter executed a document, received by the County Department of Public Works on August 8, 1966, consenting to the modification of Resolution No. 5-2127 in order to relocate the sidewalks next to the curb, reserving, however, their right to object to or to oppose the levy of any assessment arising from any improvement to or reconstruction of Tilden Lane.

On August 9, 1966, the County Council adopted Resolution No. 5-2944 amending Resolution No. 5-2127 to provide that sidewalks should be installed immediately adjacent to the curb.

As we have indicated, the appellants Murphy bought the subject property from the Osbergs in June 1967. The Murphys, on October 18, 1968, executed an authorization and instruction to the County Director of Public Works to install driveway aprons and transitions at the subject property, estimated to cost a total of $458.67, and which stated: "It is understood that the actual cost of this work will be assessed against my property as a special benefit. Remarks: Approx. 455.00 to 465.00."

On November 10, 1970, the County Council adopted Ordinance No. 6-228 in accordance with the County Code, Section 24-36, levying a special assessment in the amount of $92,277.58 for bituminous roadway, curb, gutter, sidewalk and incidental work against adjacent properties and owners of record as of September 22, 1970, based upon linear footage. In ordinance No. 6-228, the County Council found and declared the work "to be of special benefit to the properties" listed, the appellants Murphy being assessed $1,295.24. The total cost of the project was $301,507.42, the County paying $209,229.84 of the total cost or approximately 70% of the total cost. The Murphys do not dispute the calculation and the amount of the assessment, but, as indicated, challenge its validity.

This challenge was presented in a bill of complaint for a declaratory decree and an injunction filed in the circuit

court on January 8, 1971. The lower court sustained a demurrer to the bill of complaint filed by the County but permitted the Murphys to file a petition on appeal pursuant to subtitle B of the Maryland Rules, thereby converting their equity suit into an administrative appeal. As a result of the County's request for admission of facts and genuineness of documents, the Murphys admitted that they were aware of the construction and reconstruction of Tilden Lane and of the proposed assessment for the improvement when they purchased the subject property in June 1967 and that the driveway authorization of October 18, 1968, was executed by them. The County, in answer to an interrogatory propounded by the Murphys, filed a preliminary appraisal report of John J. Shank, MAI, SRA, indicating that, in his opinion, the subject property was increased in value by $3,000.00 (from $57,000 to $60,000) by the improvement of Tilden Lane and hence the subject property was benefited at least in the amount of $1,295.24. He also found that sales of properties after the reconstruction of Tilden Lane indicated a substantial increase in value.

At the hearing on the petition for appeal on December 29, 1971, the appellants Murphy presented legal arguments that they were not specially benefited as well as certain procedural arguments. They indicated that they had originally intended to introduce the testimony of two members of the County Council but, upon further consideration, had decided not to present any evidence at the hearing. The appellees moved to dismiss the appeal because the appellants had not overcome the presumption of validity of the legislative action of the County Council. The appellees also moved to introduce some 14 exhibits (including the Shank appraisal report) and other evidence indicating that the type of appeal was a hybrid one and that it was appropriate that the lower court have appraisal, engineering and other testimony, as the circuit court in prior street assessment cases had done. The lower court reserved ruling on the motion to introduce evidence and testimony until it decided the motion to dismiss.

Judge Moorman, on April 6, 1972, filed his opinion in the circuit court affirming the action of the County Council in adopting Ordinance No. 6-228 and dismissed the Murphys' appeal. After a careful review of the facts, Judge Moorman concluded:

"It is the Court's view that there is no merit to the appellants' contention that they were not afforded an opportunity to be heard because their predecessors were given the opportunity on June 15, 1965. Appellants rely upon *Londoner v. Denver,* 210 U. S. 373 (1908) in which there was complete absence of notice or hearing. *Londoner* holds that due process requires a hearing at some stage of the proceeding before the assessment becomes final. Where, however, the action taken is legislative, due process under the Fourteenth Amendment to the United States Constitution does not require a hearing. *Chevy Chase Village v. Montgomery County Board of Appeals,* 249 Md. 334, 345 (1968); *Albert v. Public Service Commission,* 209 Md. 27, 36-37 (1956).

"We have been unable to find law providing for a second hearing.

"The appellants contend that the Council did not have before it any evidence upon which to make a determination as to special benefit accrued other than 'a mathematical computation under the road construction code.'

" 'The usual presumption is that a local improvement is for the special benefit of the property assessed. . . . Where the legislature has fixed the assessment, the courts will ordinarily enforce it and the matter is usually considered one for the exercise of legislative discretion.' *V.F.W. v. Montgomery County,* 207 Md. 442, 452 (1955).

"It is within the province of the legislature

to prescribe how the apportionment of the costs of construction of a street or road shall be made and the legislature may apportion the cost of improvement among the owners of abutting property in proportion to the front footage. *Somerset County Sanitary Commission v. Chamberlin,* 254 Md. 630 (1969)."

The appellants Murphy contended before us that they were denied due process of law in that (1) they had not been afforded a constitutionally required hearing in regard to the special benefit assessment and (2) the County Council purported to make an essential factual finding of benefit to those assessed without any supporting evidence. We shall consider these contentions in the order indicated.

## (1)

The appellants—as they did in the lower court—rely on the decision of the Supreme Court of the United States in *Londoner v. City & County of Denver,* 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103 (1908) to support their contention that they had not been afforded a hearing and thus had been denied due process of law. We agree with Judge Moorman that this reliance is misplaced, because in *Londoner* there was a *complete absence* of a hearing which is quite a different situation from the one presented in the instant case. In *Londoner,* the charter of the City of Denver provided that the Board of Public Works of the City of Denver issue a certificate of costs of the improvement and a preliminary apportionment of those costs. The City Council of Denver, acting as a Board of Apportionment, was then to publish a notice of the apportionment and advise the property owners that they could file written objections within 30 days which would be heard and determined by the City Council before the passage of any ordinance assessing the cost. The printed notice did not fix any time for a hearing and no hearing was held even though certain property owners did file objections to the proposed assess-

ments. The Supreme Court of the United States, in reversing the Supreme Court of Colorado, in an opinion by Mr. Justice Moody (Mr. Chief Justice Fuller and Mr. Justice Holmes, dissenting without opinion), stated:

"In the assessment, apportionment and collection of taxes upon property within their jurisdiction the Constitution of the United States imposes few restrictions upon the States. In the enforcement of such restrictions as the Constitution does impose this court has regarded substance and not form. But where the legislature of a State, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing. [citing cases] * * *"

"If it is enough that, under such circumstances, an opportunity is given to submit in writing all objections to and complaints of the tax to the board, then there was a hearing afforded in the case at bar. But we think that something more than that, even in proceedings for taxation, is required by due process of law. Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal."
210 U. S. at 385-86, 28 S. Ct. at 714, 52 L. Ed. at 1112.

In the present case, as we have observed, *there was a hearing* on June 15, 1965, at which testimony was taken both in support and in opposition—at least in part—to the proposed improvement of Tilden Lane. There was substantial evidence in regard to the estimated cost and the estimated dollar basis for the front-foot assessment. It is uncontradicted that the Osbergs, the predecessors in title of the Murphys, were given the required notice of this public hearing, although they did not appear at the hearing. The Osbergs had actual notice of the passage of Resolution No. 5-2127, consented to its modification in regard to the construction of sidewalks at the curb and the County Council modified Resolution No. 5-2127 in accordance with their request, as well as the request of other property owners.

In our opinion the hearing of June 15, 1965, was entirely sufficient to afford the property owners of the subject property due process of law. *No second hearing* was required. *See Dinneen v. Rider,* 152 Md. 343, at 358-59, 136 A. 754, at 760 (1927), involving front-foot benefit assessments in Baltimore County, in which Judge Parke, for the Court, stated:

"The only public hearing provided by the act is the one found in section 4, and every one owning property in any sub-district or interested in the projected improvement is given constructive notice of this hearing, at which the propriety and suitability of the tentative plans are open for discussion, consideration, and revision, with respect to the area affected, the improvements designed, the several classifications of the abutting property, and the relative apportionment of the front foot rate unit among the four classes of property abutting on the improvements. The nature and scope of the public hearing are broad and comprehensive, since the commissioners' preliminary conclusion is not made until surveys, studies, plans, specifications, and estimates are first before the board

for consideration, and these would indicate the probable cost to the properties affected and the length of the line of each improvement, and all would be available to interested parties at the hearing, who could derive therefrom a reasonably close approximation of the final front foot rate. So, all manner of objections, including its cost per front foot to abutting property owners, the unreasonableness of the classification of abutting properties, and the advisability of making the improvement, when its cost would be compared with the benefits to be conferred, could be urged, heard, and decided at the public hearing provided, and it is with respect only to the area to be included and the improvements to be carried out that the decision, after public hearing, is final, since the classification of property is to be changed from time to time, as its uses may be altered. Without determining if the further provision that all charges and the front foot assessment may be collected 'by an action for debt or by a suit in equity to foreclose the lien' is sufficient to constitute due process of law, it would seem that any necessity for an adequate and timely notice and hearing is, when weighed in relation to the other provisions of the statute, adequately met by the one specific public notice and hearing required by the act. [citing cases]"

The Murphys admitted that they had actual notice of the proposed improvement when they purchased the subject property from the Osbergs, their predecessors in title. Indeed, they would have been charged with notice in any event. *See Columbia Hills v. Mercantile*, 231 Md. 379, 190 A. 2d 635 (1963) ; *Booth v. Uvalde Rock Asphalt Co.*, 296 S.W. 345 (Tex. Civ. App. 1927).

As we have noted, the Murphys, on October 18, 1968, requested and instructed the County to install aprons and driveway transitions at an estimated cost of $458.67

which they understood would be assessed as a special benefit against the subject property for the actual cost of the work.

Our opinion that adequate notice and hearing were provided the affected property owners and hence there was no denial of due process of law is supported by the authorities. *See Mullane v. Central Hanover Bank & Tr. Co.,* 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ; *Mylander v. Baltimore,* 166 Md. 658, 172 A. 234 (1934) ; *Washington Suburban Sanitary Commission v. Scrivener,* 153 Md. 68, 137 A. 492 (1927) ; *Jarvis v. Berlin,* 153 Md. 156, 138 A. 7 (1927) ; *Johns Hopkins Club Bldg. Co. v. Mayor,* 130 Md. 282, 100 A. 298 (1917).

### (2)

The appellants Murphy secondly contend that the County Council made a finding of an essential fact, *i.e.,* that there was a benefit to the property owners assessed, without any supporting evidence.

As we have indicated, however, the County Council made a legislative determination in Ordinance No. 6-228 that:

> "The work described above is hereby found and declared to be of special benefit to the properties shown on said list in the amounts assessed."

It is well established that this legislative determination is presumed to be correct. In *Silver Spring Memorial Post v. Montgomery County,* 207 Md. 442, 452, 115 A. 2d 249, 254 (1955), in sustaining the validity of an ordinance of the County Council of Montgomery County assessing a special benefit assessment against the property of the Silver Spring Memorial Post, Chief Judge Brune, for the Court, aptly stated:

> "The ordinance does definitely find 'benefits' in specified amounts to the abutting properties against which the assessments are made. The usual presumption is that a local improvement

is for the special benefit of the property assessed. [citing cases]

"Where the legislature has fixed the assessment, the courts will ordinarily enforce it and the matter is usually considered one for the exercise of legislative discretion. *Bassett v. Ocean City, supra; Lyon v. Town of Hyattsville, supra.* A number of cases, including the Bassett case, draw a distinction between cases where the legislative body has determined the assessment and cases where the determination has been made by subordinate officials. If full legislative power in such matters has been conferred upon a municipal corporation, the same rule applies as if the determination had been made by the legislature itself. *Hancock v. City of Muskogee,* 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081."

*See also Crown Central Petro. Corp. v. Mayor & City Council of Baltimore,* 258 Md. 82, 89, 265 A. 2d 192, 196 (1970) in which Judge Singley, for the Court, stated:

"For Crown Central to prevail, it must meet the heavy burden of overcoming the presumption of the constitutionality of legislative action, *even if the legislative body acted without any evidence at all, Mayor & City Council of Baltimore v. Biermann, supra,* 187 Md. at 523, 50 A. 2d 804."

There simply is no evidence in the record to rebut the legislative finding and hence the lower court properly dismissed the petition of appeal of the Murphys. We do not reach the question of whether or not the lower court should have admitted the evidence proffered by the appellees in regard to benefit to the abutting property owners inasmuch as the absence of that evidence was not prejudicial to the appellees. We express no opinion in this regard.

*Order of March 20, 1972, affirmed, the appellants to pay the costs.*